2010 ME 133

**Alice C. ANDROKITES**

**v.**

**Nancy Blake WHITE et al.**

Supreme Judicial Court of Maine.

Argued: Nov. 10, 2010.
Decided: Dec. 21, 2010.

David J. Fletcher, Esq. (orally), Teresa
E. Stepan, Esq., Fletcher & Mahar, P.A.,

Calais, ME, for Nancy Blake White and Malcolm White.

John P. Foster, Esq. (orally), Kathleen A. Mishkin, Esq., Eastport, ME, for Alice Androkites.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, GORMAN, and JABAR, JJ.

ALEXANDER, J.

[¶ 1] Nancy Blake White (White) and Malcolm White (collectively, the Whites) appeal from a judgment entered in the Superior Court (Washington County, *Cuddy, J.*) following a nonjury trial, (1) finding in favor of an abutting landowner, Alice C. Androkites, in her trespass claim against the Whites, and (2) granting Androkites's request for a declaratory judgment and injunctive relief prohibiting the Whites from using a footpath that crosses Androkites's property. The Whites argue that the court erred in applying recent law on adverse possession, *see Hamlin v. Niedner*, 2008 ME 130, 955 A.2d 251, to conclude that they did not meet their burden of proving that they have a prescriptive easement over Androkites's property.[1] We affirm the judgment.[2]

## I. CASE HISTORY

[¶ 2] Nancy Blake White owns waterfront property located on Harrington Bay (the White Property) on which she has a cottage. White's husband, Malcolm White, does not jointly own the White Property, but is a named defendant in this case. Alice C. Androkites owns waterfront property on which she has a cottage (the Androkites Property) that is immediately south of the White Property. This case involves the Whites' right to use an established footpath, known as the Shore Path, that crosses the Androkites Property. The Shore Path runs north-south along the water, crossing part of the White Property, all of the Androkites Property, and proceeding through the property to the south of Androkites's lot to the property beyond.

[¶ 3] The White and Androkites Properties were originally a single lot owned by White's grandmother. White's mother and maternal uncle jointly acquired that single lot in or around 1945. In 1962, White's mother and uncle divided their single lot into seven smaller lots. Through an exchange of conveyances, White's mother acquired three of the seven lots, including what is now the White Property, and White's uncle acquired four of the lots, including what is now the Androkites Property. In 1977, White's mother conveyed her lots to White. In 1994, White's cousin acquired the current Androkites Property. White's cousin sold that lot to Androkites in September 2000. The 2000 transfer to Androkites was the first transfer of that piece of property outside the

1. The Whites also argue that the trial court should have applied the case law concerning prescriptive easements as it existed in 2000. We do not agree. *See Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 96–97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) (stating that the substantive law may not "shift and spring according to the particular equities of [individual parties'] claims of actual reliance on an old rule and of harm from a retroactive application of the new rule"); *id.* at 107, 113 S.Ct. 2510 (Scalia, J., concurring) (noting the distinction between the judicial and the legislative power in this regard).

2. The Whites suggest that if we affirm, we should also remand to permit them to attempt to prove adversity. We decline to do so, as all parties were fully on notice in the trial court that adversity was an issue, and the sworn testimony and agreed facts presented to the trial court are not consistent with a claim of adversity of use among family members when the property was entirely within family ownership.

family since it was acquired by White's grandmother well before 1945.

[¶ 4] White spent almost every summer, or parts thereof, of her life at the family lots on Harrington Bay. Her grandparents, parents, and uncle's family also vacationed there each summer. Since the 1962 division of the jointly-owned lot, White and other family members used the Shore Path to cross what is now the Androkites Property to visit each other and other adjoining lots, go to the beach, and get to a boat mooring area. White never asked for or received permission from any family members to cross their property using the Shore Path and is not aware of anyone else asking permission. White testified that it was apparent to the family members who owned the current Androkites Property that she and others used the Shore Path across their lot because they often would exchange greetings, and no one interrupted her use of the path.

[¶ 5] In 2000, White's cousin prepared to sell what is now the Androkites Property to Androkites. As a prerequisite to selling her lot to Androkites, White's cousin acquired a release deed from the Whites providing that the Whites would abandon any right they had to use a parking area next to the cottage on the Androkites Property. The release deed expressly excepted from the release "any mutual right that any of the parties may have to walk the so-called [S]hore [P]ath." [3] The Whites did not, however, acquire or claim any easement "for parking or passage other than those created or reserved in recorded deeds" under the release deed. The par-

ties generally stipulated, and the evidence in the record shows, that no recorded deed grants an easement to owners of the White Property over the Shore Path on the current Androkites Property or otherwise reserve such use or right.

[¶ 6] The Whites frequently walked on the Shore Path during several summers after Androkites purchased the property. The Whites do not need access to the Shore Path to travel to points south of the White Property; they have a deeded right to use the private road from White's property through the Androkites Property to points south.

[¶ 7] In 2006, Androkites filed a complaint for declaratory judgment and injunctive relief against the Whites seeking to enjoin them from using the Shore Path and otherwise trespassing on the Androkites Property.[4] The Whites filed an amended answer and counterclaim asserting an affirmative defense of prescriptive easement and seeking a declaration of the rights and responsibilities of the parties to the Shore Path.

[¶ 8] Androkites filed a motion for summary judgment, which was denied, and filed a motion to reconsider based on our then recent decision in *Hamlin v. Niedner,* which was also denied. At trial, the Whites presented evidence in opposition to Androkites's claim and argued that the use made by White and her family of the Shore Path since 1962 established a prescriptive easement over the Androkites Property. The court entered a judgment

---

**3.** The release deed also expressly excepted from the release any rights reserved or created by prior deed, including the right of the owners of the White Property to use the common well on the Androkites Property, the private road, and a portion of the sandy beach adjacent to the Androkites Property. These rights are not at issue in this case.

**4.** Androkites also named White's brother and his wife as defendants in the complaint. White's brother owns the White Property with White, but White's brother and his wife released by deed any claim they had to use the Shore Path and were dismissed from this case.

for Androkites on her declaratory judgment claim and on her claim for trespass, awarding Androkites one dollar without interest or costs on the trespass claim. The court found in Androkites's favor as to the Whites' counterclaim for declaratory judgment.

[¶ 9] The Whites filed a motion for reconsideration and for findings of fact. The court denied the motion for reconsideration, but granted the motion for additional findings of fact and made additional factual findings. The Whites then brought this timely appeal.

[¶ 10] On appeal, the Whites argue that the trial court adopted an inappropriate standard for determining when a prescriptive easement has been established over property owned within the family of the person claiming the easement. Specifically, the Whites argue that the court erroneously extended the holding concerning adverse possession in *Hamlin v. Niedner*, 2008 ME 130, 955 A.2d 251, to impose upon them the burden of proving adversity as between White and previous owners of the Androkites Property, because the owners involved were family members.

[¶ 11] The Whites argue that hostility or adversity, which they suggest implicates "the necessity of airing family laundry," has never been an element of a prescriptive easement claim and that there is no precedent for placing the burden of proof on them in this matter.

## II. LEGAL ANALYSIS

### A. Standards of Review and Elements of a Prescriptive Easement

[¶ 12] We review questions of law and legal conclusions, including the construction of deeds, de novo. *Mill Pond Condo. Ass'n v. Manalio*, 2006 ME 135, ¶ 6, 910 A.2d 392, 395; *Murch v. Nash*, 2004 ME 139, ¶ 10, 861 A.2d 645, 649. We review the trial court's factual findings as to the elements of a prescriptive easement for clear error and will affirm those findings if supported by competent record evidence, even if evidence could support alternative factual findings. *Eaton v. Town of Wells*, 2000 ME 176, ¶ 33, 760 A.2d 232, 244. We will vacate the trial court's conclusion that the party with the burden of proof failed to prove a prescriptive easement only if the evidence compelled a contrary conclusion. *Jordan v. Shea*, 2002 ME 36, ¶ 22, 791 A.2d 116, 122.

[¶ 13] The statutory requirement for establishing a prescriptive easement is found at 14 M.R.S. § 812 (2009), which provides in relevant part that "[n]o person, class of persons or the public shall acquire a right-of-way or other easement through, in, upon or over the land of another by the adverse use and enjoyment thereof, unless it is continued uninterruptedly for 20 years." *Sandmaier v. Tahoe Dev. Group, Inc.*, 2005 ME 126, ¶ 5, 887 A.2d 517, 518. This statutory provision, long part of Maine property law, *see* R.S. ch. 174, § 12 (1954), has been interpreted and applied through an extensive body of case law.

[¶ 14] The party claiming a prescriptive easement has the burden at trial of proving by a preponderance of the evidence each of the following elements: (1) continuous use for at least twenty years; (2) under a claim of right adverse to the owner; (3) with the owner's knowledge and acquiescence, or with a use so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed. *Sandmaier*, 2005 ME 126, ¶ 5, 887 A.2d at 518; *accord Jordan*, 2002 ME 36, ¶ 22, 791 A.2d at 122; *Town of Kittery v. MacKenzie*, 2001 ME 170, ¶ 15, 785 A.2d 1251, 1255–56; *Dartnell v. Bidwell*, 115 Me. 227, 230, 98 A. 743, 744 (1916).

[¶ 15] The first element, continuous use for at least twenty years, is not in dispute.[5] For purposes of our analysis, we also assume that the third element of the prescriptive easement analysis was established.[6] What remains in dispute is the second element: whether White's and other family members' use of the Shore Path over what is now the Androkites Property was "under a claim of right adverse to the owner."

## B. Claim of Right Adverse to Owner

[¶ 16] The party claiming a prescriptive easement must prove that she has used the property under a claim of right that is adverse to the owner. *Jordan*, 2002 ME 36, ¶ 22, 791 A.2d at 122. Using the property "under a claim of right" means that the claimant "must be in possession as the owner, intending to claim the land as [her] own, and may not be in recognition of or subordination to the record title owner." *Id.* ¶ 23, 791 A.2d at 122. The claimant's use of the property is "adverse to the owner" only when the claimant "has received no permission from the owner of the soil, and uses the way as the owner would use it, disregarding [the owner's] claims entirely, using it as though [she] owned the property [her]self." *Stickney v. City of Saco*, 2001 ME 69, ¶ 21, 770 A.2d 592, 602; *see also Jordan*, 2002 ME 36, ¶ 23, 791 A.2d at 122–23.[7]

[¶ 17] Although we have held that, when the first and third elements of a private prescriptive easement are established, as we assume they are in this case, a presumption arises that the use of the property was under a claim of right adverse to the owner, *see Lyons v. Baptist Sch. of Christian Training*, 2002 ME 137,

---

5. The trial court found, as supported by record evidence, that White and her family members continuously used the Shore Path for more than twenty years. *See Stickney v. City of Saco*, 2001 ME 69, ¶ 18, 770 A.2d 592, 601 ("Continuous possession and use requires only the kind and degree of occupancy (i.e., use and enjoyment) that an average owner would make of the property."); *see also S.D. Warren Co. v. Vernon*, 1997 ME 161, ¶ 6, 697 A.2d 1280, 1282.

6. The trial court's findings on the issue of knowledge and acquiescence are somewhat unclear. Nonetheless, the parties do not suggest that the Whites failed to meet their burden as to the third element of knowledge and acquiescence. The record supports a finding that White's use was with the knowledge of her family members who owned the current Androkites Property from 1962 to 2000, and that those family members either acquiesced to such use or that her use of the path was so open, notorious, visible, and uninterrupted that acquiescence is presumed. The record also supports the finding that White never asked for or received permission from her family members to cross their property using the Shore Path and that she knew of no one else who did. *See Jacobs v. Boomer*, 267 A.2d 376, 378 (Me.1970) ("Acquiescence ... means passive assent such as consent by silence and does not encompass acquiescence in the active sense such as ... by means of the positive grant of a license or permission.").

7. We have previously held that the prescriptive user's state of mind was relevant to whether use was adverse under a claim of right. *See Jordan v. Shea*, 2002 ME 36, ¶ 23, 791 A.2d 116, 123; *Glidden v. Belden*, 684 A.2d 1306, 1317 (Me.1996). However, following a 1993 statutory change in the law pertaining to adverse possession in the context of a mistaken boundary line, 14 M.R.S.A. § 810-A (Supp.1998) (subsequently amended by P.L.2009, ch. 255, § 1 (effective Sept. 12, 2009) (codified at 14 M.R.S. § 810-A (2009))), we held that "the intent requirement [i.e., that the claimant have the specific intent to claim the land of another] for adverse possession claims is eliminated." *Dombkowski v. Ferland*, 2006 ME 24, ¶¶ 23 n. 6, 24, 893 A.2d 599, 605.

"The adversity issue is treated the same in adverse possession cases and prescriptive easement cases." *Jordan*, 2002 ME 36, ¶ 31, 791 A.2d at 124. Accordingly, the prescriptive user's state of mind is no longer relevant in prescriptive easement claims.

¶ 18, 804 A.2d 364, 370, the presumption will not arise if there is an explanation of the use that contradicts the rationale of the presumption. *Jacobs v. Boomer*, 267 A.2d 376, 378 (Me.1970) (presumption applies unless "contradicted or explained"); *Burnham v. Burnham*, 130 Me. 409, 411, 156 A. 823, 824 (1931).

[¶ 18] When, as here, the dominant and servient estates were owned within the same family during the period in which the prescriptive right of access is alleged to have accrued, application of such a presumption that shifts the burden of proof is inappropriate. Absent evidence to the contrary, the law will infer that comings and goings of family members, across property owned within the family, are by accommodation or permission and do not have the requisite adversity to support imposition of a prescriptive easement by one family member upon another. *See, e.g.,* 4 Richard R. Powell, *Powell on Real Property* § 34.10[2][c] (2005) (the presumption of adversity is inapplicable when the landowner and user have a relationship, such as a close blood relationship, such "that the landowner is reasonably entitled to regard the use as permissive unless specifically informed of the contrary fact").

[¶ 19] Under the facts of this case and our decision in *Hamlin v. Niedner*, no presumption applied to shift the burden of proof to Androkites, because White's historical use of the Shore Path in a manner that, had the use been by a stranger, might appear to have been under a claim of right adverse to the owner, was explained by the family relationship. Placement of the burden of proof on the family member asserting adversity is consistent with our view that in a civil case, the party to a proceeding who has better access to information and is seeking the benefit or protection of a law has the burden of proof on that point. *See In re Trever I.*, 2009 ME 59, ¶ 13, 973 A.2d 752, 756; *Dowley v. Morency*, 1999 ME 137, ¶ 11, 737 A.2d 1061, 1066; *see also United States v. New York, New Haven & Hartford R.R. Co.*, 355 U.S. 253, 256 n. 5, 78 S.Ct. 212, 2 L.Ed.2d 247 (1957) ("The ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary."). Family members would know what past adversity may have affected use of family property. A stranger from outside the family would not.

[¶ 20] *Hamlin* involved, in relevant part, the parties' claim of title by adverse possession to land owned by a family member. 2008 ME 130, ¶¶ 1, 3, 955 A.2d at 252, 253. To acquire title by adverse possession, the claimant must prove that the possession and use of the property was actual, open, visible, notorious, hostile, under a claim of right, continuous, exclusive, and for a duration exceeding twenty years. *Id.* ¶ 10, 955 A.2d at 254. Observing that "[t]he law generally disfavors findings of adverse possession," and that "[t]here is every presumption that the occupancy is in subordination to the true title," we held that "when property is or had been held within one family, the burden of establishing hostility is greater." *Id.* ¶¶ 11, 13, 955 A.2d at 255. We further held that "[w]hen parties have a familial relationship, there must be clear proof of hostility and actual notice to the true owner to satisfy the hostility requirement and transfer title by adverse possession." *Id.* ¶ 13, 955 A.2d at 255.

[¶ 21] Contrary to the Whites' contention that the element of "hostility," which was at the heart of our analysis in *Hamlin*, is not an element of a prescriptive easement claim, the element of hostili-

ty is present in prescriptive easement law, characterized as "adversity" in the "a claim of right adverse to the owner" element.[8] *See Jordan,* 2002 ME 36, ¶ 31, 791 A.2d at 124; *see also Glidden v. Belden,* 684 A.2d 1306, 1318 n. 20 (Me.1996); 25 Am.Jur.2d *Easements and Licenses* § 56 (2004) ("Generally, the hostile and adverse character of the use necessary to establish an easement by prescription is the same as that which is necessary to establish title by adverse possession."). We reiterate that, whether discussing prescriptive easements or adverse possession, the element of "hostility" or "adversity" does not require a "heated controversy or a manifestation of ill will" toward the owner.[9] *Lyons,* 2002 ME 137, ¶ 26, 804 A.2d at 372 (quotation marks omitted).

[¶ 22] Accordingly, our holding in *Hamlin* is applicable to this case involving a claim of a prescriptive easement. When a prescriptive easement is claimed as between family members, the prescriptive easement claimant may not rely upon a presumption of use under a claim of right adverse to the owner when the other elements of a prescriptive claim are proved; and the prescriptive user instead bears the burden of proving, by a preponderance of the evidence, that she used the land under a claim of right in a manner adverse to the owner, which requires proof of adversity and actual notice to the true owner. *See, e.g.,* 4 Richard R. Powell, *Powell on Real Property* § 34.10[2][c] (2005).

[¶ 23] Because the record supports the court's findings that the Whites (1) did not

prove by a preponderance of the evidence that they used the Shore Path maintaining a claim of right adverse to the owner of what is now the Androkites Property, *see Jordan,* 2002 ME 36, ¶ 22, 791 A.2d at 122, and (2) failed to show actual adversity and notice to the family members who owned the property during the relevant period, *see Hamlin,* 2008 ME 130, ¶¶ 13–14, 955 A.2d at 255, we affirm the court's finding that the Whites did not prove a prescriptive easement.

The entry is:

Judgment affirmed.

---

8. We have observed on more than one occasion that the primary difference between the elements of adverse possession and those of prescriptive easement relates to the necessity of showing acquiescence to establish a prescriptive easement. *See Stickney,* 2001 ME 69, ¶ 23, 770 A.2d at 602; *Pace v. Carter,* 390 A.2d 505, 507 n. 2 (Me.1978); *Dartnell v. Bidwell,* 115 Me. 227, 230, 98 A. 743, 744–45 (1916).

9. Because "hostility" does not refer to the existence of a "heated controversy or a manifestation of ill will," the Whites' concern that affirmation of the court's judgment will lead to the "inappropriate" "airing of family laundry" in future cases with similar facts is unfounded.