| 9 | 1—11

STATE OF MAINE                          SUPERIOR COURT
WALDO, SS.                              CIVIL ACTION
                                        Docket No. CV-09-10


Roy G. Antaki et al.,
        Plaintiffs


v.                                      Decision and Judgment


Glenn W. Martin,
        Defendant


Plaintiffs Roy G. Antaki and Ana. M. Antaki own a parcel of land located in Montville. Their land is bounded on several sides by property owned by defendant Glenn W. Martin. A private way is located over the Antakis' land and, at both ends, crosses onto Martin's land. Martin claims here that his land is benefited by a prescriptive easement over that private way. The Antakis dispute that claim, and this legal action is the result. Trial was held on the issue, at which all three parties appeared with counsel. For the reasons set out in this order, the court concludes that Martin has not proven the existence of the prescriptive easement and therefore enters judgment for the Antakis.

In order to establish that a prescriptive easement has been created, the claimant must prove the following three elements by a preponderance of the evidence: (1) continuous use of the servient estate for at least twenty years; (2) use under a claim of right adverse to the owner; (3) use with the owner's knowledge and acquiescence, or a use so open, notorious, visible, and uninterrupted that the owner's knowledge and acquiescence will be presumed. *Androkites v. White*, 2010 ME 133, ¶ 14, 10 A.3d 677, 681.

Here, the court finds that Martin has failed to prove the second of these elements. In discussing the content of that requirement of proof, the *Androkites* Court summarized existing law on the issue:

> The party claiming a prescriptive easement must prove that she has used the property under a claim of right that is adverse to the owner. . . .Using the property "under a claim of right" means that the claimant must be in possession as

1

the owner, intending to claim the land as [her] own, and may not be in recognition of or subordination to the record title owner. . . .The claimant's use of the property is "adverse to the owner" only when the claimant has received no permission from the owner of the soil, and uses the way as the owner would use it, disregarding [the owner's] claims entirely, using it as though [she] owned the property [her]self.

*Androkites*, 2010 ME 133, ¶ 16, 10 A.3d at 682 (citations and some internal punctuation omitted).[1] *See also Stickney v. City of Saco*, 2001 ME 69, ¶ 21, 770 A.2d 592, 602; *Taylor v. Nutter*, 687 A.2d 632, 635 (Me. 1996).

The trial record includes evidence of the use of the road during three periods of ownership of the allegedly servient estate (the Antakis' land). The first was while the property was owned by Charles Choate. Choate's ownership covers the beginning of the period of prescription claimed by Martin (which, according to his own testimony, begins in the mid- to late-1950's), until Choate died and his estate sold the property in 1985. During the second ownership period, the land was owned by Joseph Thornley. This lasted until he sold the property to the Antakis in early 1997. The evidence demonstrates clearly that the Antakis excluded Martin from their land from the time they acquired the property, and Martin largely acceded to that exclusion.[2] The prescriptive period therefore ended by the time the Antakis acquired the property. To satisfy the requirement of a twenty-year prescriptive period, this means that Martin must prove that during at least some of the time when Choate owned the property (more specifically, beginning no later than 1977), the character of his use of the property[3] was continuous, under a claim of

---

[1] Although some of the language incorporated into the opinion in *Androkites* comes from caselaw that examines claims of title by adverse possession, the Law Court noted that the adversity element in a title claim is the same as is relevant to prescriptive easement cases. *See Androkites*, 2010 ME 133, ¶ 16, n.7, 10 A.3d at 682.

[2] In 2009, someone broke through several barricades that the Antakis placed at both ends of the section of the way that is beyond their house. Roy Antaki blocked the road again after this incident. There is no evidence that Martin was responsible for this intrusion. During a winter in the late 2000's, Martin plowed the way and drove a snowmobile on it. This was his first use of the road after the Antakis acquired the land. He was served with a trespass notice and then did not use the road again.

[3] Martin's evidence of use is based not only on his own use of the property but use made of the property by his father, who is Martin's predecessor in title, and other family

2

right adverse to Choate, and with Choate's actual or presumed knowledge and acquiescence.

The court finds that even if Martin's use of the road can be characterized in those ways, it was not of sufficient length to meet the prescriptive period. The evidence reveals that Martin and his family had a warm relationship with Choate and had regular contact with him. Martin described Choate as a close family friend. In fact, Martin named his daughter after Choate's wife. Also, Choate once offered to give his land to Martin, although Martin graciously declined the offer, concluding that if he was not able to afford it on his own, he should not accept it as a gift. Various defense witnesses testified at trial that the Martins used the disputed way regularly as they logged the portion of their property that can be reached by use of that road. If so, this means that members of the Martin family were present regularly on the Choate land. One of Martin's brothers, Charles Martin, Jr., noted that he visited Choate often. Even several people who worked for Martin's father visited with Choate when they used the way. Choate owned farm animals that grazed in a pasture through which a portion of the way ran. Choate set up a wire fence so that persons using the road could open the enclosure, drive through, and then close the fence behind them. The Martins used this system without objection from Choate. Overall, Choate never objected to the Martins' use of the way on his land.

The court finds that in its essence, Martin and members of his family used the way permissively. That use was not adverse to Choate's ownership interests and rights: neither Martin nor other members of the Martin family disregarded any claims or interest that Choate held in his property. Rather, the arrangement fully appears to have been a cooperative one: Choate and the Martins had a strong interpersonal bond, and Choate was willing to accommodate the Martins' efforts of cutting wood off a portion of their property that was conveniently accessible by the way that passed over Choate's property. In return, the Martins respected Choate's interest in the land by restoring his cows' enclosure when they passed through by hooking the wire fence back up.

---

members who used the land with Martin. Where sequential users of land have privity of title, their continuous use is viewed as a whole through tacking. *See Gutcheon v. Becton*, 585 A.2d 818, 822 (Me. 1991). Thus, the court considers evidence of the use of the servient estate as evidence of continuous use, although the court recognizes that the Antakis dispute the claim that the Martins used the way continuously.

In its discussions of the adversity element of a prescriptive easement case, the Law Court has equated that concept to the hostility element of an adverse possession claim.[4] *Androkites*, 2010 ME 133, ¶ 21, 10 A.3d at 683-84. Hostile possession of land – and therefore, through the symmetry of concepts noted in *Androkites*, adverse use of the servient estate – is negated by permission granted by the landowner. *Striefel*, 1999 ME 111, ¶ 13, 733 A.2d at 991: "Use with the true owner's permission. . .cannot be hostile to the true owner's title." *Miller v. Anderson*, 964 P.2d 365, 369 (Wash.App. 1998), *quoted in Striefel supra*. Further, that permission granted by the landowner can be either express or implied. *Striefel*, 1999 ME 111, ¶ 13, 733 A.2d at 991.

Here, the court finds that Choate permitted Martin and his family members to use his land as a passageway to the back portions of their property, because Choate had a close relationship with them,[5] wanted to be helpful to them, and was willing to tolerate

---

[4] A claim for title by adverse possession, rather than a claim for use of that property through a prescriptive easement, requires proof that the use and possession of the land was actual, open, visible, notorious, hostile, under claim of right, continuous for more than twenty years, and exclusive. *Striefel v. Charles-Keyt-Leaman*, 1999 ME 111, ¶ 6, 733 A.2d 984, 989.

[5] In *Androkites*, building on its holding in *Hamlin v. Niedner*, 2008 ME 130, ¶¶ 13-14, 955 A.2d 251, 255, the Law Court extended to prescriptive easement claims a principle developed in the context of adverse possession law that is not without relevance here. When one family member seeks to establish title by adverse possession (or, now under *Androkites*, to confirm a prescriptive easement), the claimant does not get the benefit of a presumption of hostility (in the adverse possession case) or of adversity (in the prescriptive easement case) when the claimant uses or possesses the land openly or with the landowner's knowledge and acquiescence for the requisite length of time. Rather, because family members might be expected to use each others' land permissively, the law requires greater and clearer proof of hostile or adverse use rather than reliance on a presumption to that effect. If that reasoning were applied here, Martin would be subject to a greater burden to prove that his use of the property while Choate owned it was adverse, and he would not be entitled to rely as heavily on a presumption of adversity in light of the fact that a close family friend allowed him to use the property for an extended period of time. The court need not address the applicability of the holdings in *Androkites* and *Hamlin* to this case, because the court finds that the greater weight of evidence reveals that Martin's use of the property under Choate, and his family members' use of the property under Choate, was not adverse, even if the presumption arose.

4

the use of the way by the Martins as they drove their trucks on it for their logging operation.[6]

The permissive quality of the Martins' use of the way while Choate owned the land is drawn more sharply into focus when it is compared to the response of the subsequent landowner, Joseph Thornley. When Thornley acquired the property in 1985, he authorized Martin to use the way to gain access to part of the back acreage where Martin wanted to cut firewood for his own use. That use, still permissive, escalated to timber harvest for lumber that Martin sold to pay for construction of his house. Eventually, because of the increasing use of the road by the Martins and others, Thornley told the Martins that they no longer had permission to use the way. Although Martin stopped using the way for some period of time, he and other family members subsequently resumed using it even though they knew that Thornley no longer permitted it. In fact, Thornley sold the land in part because the use of the way deprived him of the privacy he wanted to have there.

This demonstrates the defiance shown by Martin while Thornley used the property, because Martin and other family members insisted on using the way that passed over Thornley's land, even when Thornley withdrew his consent for them to engage in that conduct. The quality of Martin's use of Thornley's land was plainly "adverse" because Martin used the land as his own, without the owner's permission, and in disregard of the owner's express objection to that use. This situation stands in marked contrast to Martin's use of the way while Choate owned the land. At that earlier time, the evidence indicates that Choate was simply agreeable to letting Martin family members use the land and that Choate's interests were not disregarded or adversely subordinated in the process.

For these reasons, the court finds that while Choate owned the land, Martin did not use the way in a manner that meets the requirements of the formation of a prescriptive easement. Even if Martin and members of his family used the land continuously for the

---

[6] The way is located close to the homestead on the Antaki property. This is one of the reasons why the Antakis object to the use of the way by others.

prescriptive period,[7] that use was not adverse to the owner for the length of time necessary to establish a prescriptive easement.

For these reasons, and without reaching other contentions raised by the parties, the court concludes that the Antakis' property is not subject to a prescriptive easement held by Martin for the benefit of his property. The Antakis are therefore entitled to judgment on count 1 of the complaint.

The Antakis' complaint sets out claims for trespass, sounding in both tort and statute (counts 2 and 3). They have not made a meaningful argument for or pursued any relief based on these counts, and so the court does not address those claims. On the counterclaim, Martin has withdrawn all counts except count 1, which seeks declaratory relief for a private prescriptive easement. The judgment on count 1 of the complaint shall encompass judgment for the Antakis on count 1 of the counterclaim.

The entry shall be:

For the reasons set out herein, on count 1 of the complaint, judgment is entered for the plaintiffs. The real property owned by the plaintiff as described in a deed recorded at book 1668 page 259 of the Waldo County Registry of Deeds is not subject to a prescriptive easement held by the defendant or benefiting his land, which is described in a deed recorded at book 733 page 1189 of the Waldo County Registry of Deeds. The defendant does not possess rights to or over a way located on the plaintiffs' property referenced above.

On count 1 of the counterclaim, judgment is entered for the counterclaim defendants (the plaintiffs).

Counts 2 and 3 of the complaint and counts 2 through 7 of the counterclaim are dismissed.

The plaintiffs are awarded their costs of court.

Dated: April 12, 2011

_____
Justice, Maine Superior Court

---

[7] The Antakis dispute Martin's allegation that he and his family members engaged in a continuous use of the way for twenty years. The court need not and does not reach this issue, because Martin's prescriptive easement case fails for the reason discussed in the text.

6