STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
Docket No. RE-09-187

FRANCES BUTKIEWICZ, )
             Plaintiff, )
                         )
                         )
         v.              )          **JUDGMENT**
                         )
                         )
EILEEN C. WRIGHT,        )
MIRIAM ANNE LILLY, and   )
J. KENTON WRIGHT         )
             Defendants. )

This matter came before the Court for hearing on May 23, 2011. The parties were given until June 17, 2011 to file post-trial briefs. A telephone conference was held on July 21, 2011 that clarified a stipulation as set forth below.

Plaintiff Butkiewicz owns lakeside property on Sebasticook Lake in Newport, Maine. *See Exhibits #2 and 3.* Her parents purchased the property in 1975. *See Exhibit #1.* The property has been in the Butkiewicz family since 1975.

In 1976, Tarramango Corporation acquired a small parcel of land on Sebasticook Lake. See *Exhibit # 5* (this parcel will be referenced as Parcel 1, and is described in a deed recorded in the Penobscot County Registry of Deeds at Book 2709, Page 60). This lot originally had a camp on it, but the camp was torn down by 1977, and the lot remains without any buildings on it. In 1976, Tarramango Corporation also acquired a larger parcel of land immediately to the south of Parcel 1. *See Exhibit #6* (this parcel will be referenced as Parcel 2, and is described in a deed recorded in the Penobscot County Registry of Deeds at Book 2709, Page 62). At the time of Tarramango's purchase of Parcels 1 and 2, the parcels did not have a common owner.

In 1975, the Butkiewiczs granted a right of way to Glenn and Charlotte Barr to travel over the Butkiewicz property to access a lakefront lot. *See Exhibit 4* (deed from Frank and Ann Butkiewicz to Glenn and Charlotte Barr recorded in the Penobscot County Registry of Deeds at Book 2599, page 205). During the July 21, 2011 conference, the parties stipulated that what had been the Barr lot, or a portion thereof, was sold to Tarramango Corporation in 1976, and as noted above is referenced as Parcel 1.

In 1993, Tarramango Corporation sold both Parcel 1 and Parcel 2 to Defendant Eileen Wright. *See Exhibit# 7* (deed from Tarramango Corporation recorded in the Penobscot County Registry of Deeds at Book 5408, page 366).

In 2007, Defendant Eileen Wright sold a portion of Parcel 2 to Defendant Miriam Lilly. *See Exhibit 8* (deed from Eileen Wright recorded in the Penobscot County Registry of Deeds at Book 10960, page 248)(hereinafter referenced as the Lilly property). Lilly continues to own the Lilly property. Defendant Wright retained and continues to own Parcel 1 (as described above) and 2 portions of Parcel 2: one retained portion of Parcel 2

1

lies south of the Lilly parcel and one retained portion of Parcel 2 lies north of the Lilly parcel.

The Court is satisfied that Defendant Lilly has no deeded access to her property over the Butkiewicz land and that Defendant Wright has no deeded access over the Butkiewicz land to her remaining portion of parcel 2 north of the Lilly property.[1] Thus, the only potential right Lilly and Wright have to access any portion of Parcel 2 over the Butkiewicz land would be an easement by prescription.[2]

The dispute in this case is whether Defendants Lilly and Wright have a prescriptive easement over Plaintiff Butkiewicz's property to access the Lilly property and the portion of Wright parcel 2 that is north of the Lilly parcel.

Tarramango Corporation purchased Parcels 1 and 2 in 1976. Roger d'amecourt was the corporate representative who used the property.[3] Mr. d'amecourt had a residence constructed on Parcel 2 in 1976/1977. Tarramango, its representative, guests, caretakers and contractors used Grove Street extension and Tarramango Lane over Plaintiff's property to access Parcel 2. The residence was very unusual at the time it was constructed and the construction took about a year. During the construction period, land clearing was done, dump trucks hauled fill in for 2 months on a daily basis for 3 or 4 loads per day, building materials were delivered to the site, the builders brought a box trailer in, Mr. Gordon regularly visited the site, and gardens were installed.

Sometime after completion of the construction, Mr. d'amecourt kept a very substantial art collection on the property and installed an alarm system.[4] During the first 3 or so years after the alarm system was installed, it presented many problems and the alarm apparently was tripped 20 or so times per year. The police and fire departments and Mr. Gordon and/or Mr. Miller (as caretakers) responded to these alarms. Operation of the alarm system apparently improved after the first 3 years. The caretakers and the fire and police departments used the roads over Plaintiff's property to reach to the residence.

Mr. d'amecourt spent time at the property after the residence was constructed. He spent as little as 2 weeks per year and as much as 3 months per year during the years Tarramango Corporation owned the property. When Mr. d'amecourt used the property, he arrived with an "entourage". Additionally, he held numerous luncheons and dinners at the property.

[1] At the time the right of way was deeded by the Butkiewiczs to what is parcel 1, parcel 1 and 2 were not owned by the same person. See testimony of Attorney Fowler and MSBA Practice Series, #1-2003, § 3.5.2.13 (Hermansen and Richards).

[2] The parties stipulated that Tarramango Lane never extended to the portion of Parcel 2 south of the Lilly parcel, and therefore they stipulated that no easement, deeded or prescriptive, exists to that portion of Parcel 2 that is south of the Lilly parcel The parties also agree that Defendant Wright has a deeded right of way to Parcel 1.

[3] Plaintiff has argued that Defendants have not adequately established use of the property by Tarramango Corporation. However, because corporations always act through people, and because Mr. d'amecourt clearly was the corporate actor during the time the corporation owned the property, the Court is satisfied that Tarramango Corporation used the property. Moreover, at the end of Tarramango Corporation's ownership of the property, it was Roger d'amecourt who signed the deed transferring ownership of the property to Defendant Wright.

[4] Whether the alarm system was installed rather immediately after the home was constructed or therafter is not critical to the Court's analysis because use of Grove Street extension and Tarramango Lane in response to the alarms is but one of many uses over the years.

2

Since 1977 or so, Grove Street extension and Tarramango Lane have been plowed every winter. Mr. Gordon acted as a caretaker, groundskeeper and mowed the lawns over much of the time the property was owned by the Tarramango Corporation. The Millers also took care of the gardens and mowed. Mr. Gordon also graded and improved (low spots filled) the access road over the Butkiewicz property. Mr. Gordon also regularly checked the Tarramango property.

The residence in question was heated year-round when the Tarramango Corporation owned the property. During one of the winters about 4 years or so after the initial construction had been completed, the heating system did not work properly and damage was done to the property. This damage was repaired by a contractor.

Around 1989 – 1990 there was a problem with the foundation. A contractor was also hired to repair this problem, and the contractor was on the property for about a month.

Tarramango Corporation sold the property to Defendant Eileen Wright in 1993. The Wrights moved into the property in 1993 and lived there year-round until 2005. The Wrights and their invitees used the Grove Street extension and Tarramango Lane for access to the property. During this time, Mr. Wright worked in Pittsfield and in addition to going and returning from work, he also went home for lunch. Mrs. Wright also drove in and out on a daily basis. At least once per week Mrs. Wright had friends over to paint.

The Wrights heated with oil, and oil was delivered over Plaintiff's property. Both Grove Street extension and Tarramango Lane are gravel ways, and Mr. Wright maintained these ways during Mrs. Wright's ownership of Parcels 1 and 2. During Mrs. Wright's ownership of Parcels 1 and 2, Mr. Wright plowed over Plaintiff's property up to the Wright residence (now the Lilly residence).

During the first 6 months Mrs. Wright owned the property, she had the home refurbished and carpenters traveled to the home. In 1998 a garage was constructed on the property and cement trucks and construction vehicles traveled to the property. The Wrights also hired a lawn service.

Defendant Eileen Wright sold part of parcel 2 to Defendant Lilly in May of 2007.

The earliest Plaintiff or her predecessors may have first raised objection to use of Grove Street extension and Tarramango Lane was in 2005. Clearly, Plaintiff did not raise objection until at least 2005, and there is no evidence that her predecessors raised any objection to the use of the extension or lane. Both Plaintiff Butkiewicz and Defendant J. Kenton Wright agree that they had a discussion about the lane and it appears this discussion occurred in 2005. Plaintiff Butkiewicz believes she told Mr. Wright to use his own right of way. Defendant J. Kenton Wright believes that Ms. Butkiewicz asked him not to repair the road because traffic was going too fast and potholes would slow the traffic down. About a week after the conversation, Mr. Wright recalls Ms. Butkiewicz squaring off and standing on or near the road when he (Mr. Wright) went to help other neighbors repair their road. Also around 2005 Plaintiff put some boulders on Grove Street extension purportedly for landscaping. In August of 2006, Ms. Butkiewicz's attorney sent a letter to Mr. Wright (not the owner) regarding access to the Wright property over Ms. Butkiewicz's property. However, even this letter did not demand that the Wrights use of Tarramango Lane cease.

3

To establish an easement by prescription, one must establish:
1) continuous use for at least twenty years;
2) under claim of right adverse to the owner of the servient estate; and
3) knowledge and acquiescence on the part of the owner or use so open and notorious, visible and uninterrupted that knowledge and acquiescence is presumed.

14 M.R.S. § 812. *Great Northern Paper Co. Inc. v Eldredge,* 686 A. 2d 1075 (Me. 1996).

The first element to establish an easement by prescription, is that there be continuous use of the road for at least twenty years. Continuous use need not be constant use. "Intermittent use may be continuous for purposes of establishing a prescriptive easement if it is consistent with the normal use that an owner of the property would make and is sufficiently open and notorious to give notice to the owner of the servient estate that the user is asserting an easement." *Great Northern Paper Company. See also McGary v. Lamontagne,* 623 A. 2d 161, 162 (Me. 1993)(use for cutting wood and recreational purposes several times a year, most years, constituted continuous use). The Court finds that Tarramango's use of the lakeside property was consistent with the normal level of use of lakefront property and was "continuous". In fact, Tarramango's use of the property appears to have exceeded Butkiewicz's use during several years. The Wrights used Grove Street extension and Tarramango Lane every day from 1993 to 2005, and seasonally thereafter, and their use was continuous. Defendant Lilly then continued the "continuous" use of Butkiewicz's property to access her property. Use was made of Grove Street extension and Tarramango Way by the owners and their invitees. *See GNP* (use by owner and contractor) and *Taylor v. Nutter,* 687 A. 2d 632 (Me. 1996) (use by owner and caretaker).

The Court specifically finds that use of Grove Street extension and Tarramango Lane by Tarramango Corporation to reach Parcel 2 continued from approximately 1977 to 1993. Defendant Wright then used Grove Street extension and Tarramango Way to access her property from 1993 to 2007, and Defendant Lilly used Grove Street extension and Tarramango Way thereafter. Thus, continuous use of Grove Street extension and Tarramango Way to access the properties in question has exceeded 20 years. *Gutcheon v. Becton,* 585 A. 2d 818 (Me. 1991) (successive periods may be "tacked" together to satisfy the prescriptive period when privity exists between the users).

The Court finds that Tarramango Corporation's, Wright's and Lilly's use of Grove Street extension and Tarramango Lane to access the properties in question has been "under claim of right adverse to the owner of the servient estate". The Court makes this finding both by applying the presumption of adversity when the first and third elements of establishing a prescriptive easement have been met and independently on the facts of this case.

First, the Court finds that the presumption of adversity applies in this case. A presumption exists that the use has been under claim of right adverse to the owner of the servient estate, when it has been established that: a) there has been continuous use for at least 20 years, and b) knowledge and acquiescence on the part of the owner or use so open, notorious, visible and uninterrupted that knowledge and acquiescence is presumed, unless there is an explanation of the use that contradicts the rationale of the

4

presumption[5]. *Androkites v. White*, 2010 ME 133. As noted above and below, the Court finds that the first and third elements of proof of a presumptive easement have been met. There was no family or other close relationship between the various owners of Parcel 2 and the Butkiewiczs to explain the use. Plaintiff argues that the presumption should not apply in this case because some people, including Defendant Wright to parcel 1, had a deeded right of way to travel over Plaintiff's property to reach their properties off Tarramango Lane. The Court is not satisfied that permissible use of Tarramango Lane to reach certain parcels prevents application of the presumption with respect to use to access other parcels. The use of the ways over Plaintiff's property not in accord with a deeded right of way was adverse to the Plaintiff.

Moreover, and independent of the presumption, there is no suggestion that any of the Butkiewiczs gave permission to anyone to use Grove Street extension or Tarramango Lane to access Parcel 2. Adverse use to establish a way by prescription is "nothing more than such an use of the property as the owner himself would exercise; and that when a party, in this manner and for the purposes of a way, has received no permission from the owner of the soil, and uses the way as the owner would use it, disregarding his claims entirely using it as though he owned the property himself, that is an adverse user…". *Glidden v. Belden*, 684 A. 2d 1306 (Me. 1996) citing *Blanchard v. Moulton*, 63 Me 434, 436-37 (1873). See also *GNP* (use of road adverse to servient owner even though user believed it had a legal right to do so), and *Androkites v. White*, 2010 ME 133 f. 7 (mistaken belief that user had right to road does not preclude finding that use of the road was adverse to servient owner). Each of the owners of the property in question used Grove Street extension and Tarramango Lane as an owner would use it – both for the owner's use and for invitees. They traveled over the roads themselves, as did their guests, caretakers, and contractors. Grove Street extension and Tarramango Lane have been maintained over the years by the various owners (or at their direction) through filling potholes, grading and plowing. There is no evidence that any alternate route has been used to access the property in question. Plaintiff and her predecessors knew Grove Street extension and Tarramango Lane were being used, although Plaintiff claims she did not understand that the use was to serve Parcel 2. Plaintiff and her predecessors "acquiesced"[6] in use of their property until at least 2005 (and probably 2009), when it was too late to object.

Finally, the Court is convinced that since 1977 use of Grove Street extension and Tarramango Lane has been so open, notorious, visible and uninterrupted that knowledge and acquiescence is presumed. The purpose of the requirement that the use be open and notorious is to provide the servient owner the opportunity to assert her rights against the users. *Nutter.* Testimony by the Wrights, Mr. Gordon and Ms. Miller established the extent and type of use of Grove Street extension and Tarramango Way by Tarramango, Wright and now Lilly, and it is clear the use is and has been "open, notorious, visible, and uninterrupted."[7] Apparently the Butkiewiczs did not use their property much in 1976, 1977, 1978 or 1979. Thereafter, and until 2001, it appears that the Butkiewicz property was used no more than 6 weeks per year (when Plaintiff

---

[5] The purpose of the open, notorious requirement is to provide the servient owner the opportunity to assert her rights against the users. *Nutter.*

[6] Acquiescence has been defined as "passive assent or submission to the use, as distinguished from the granting of a license or permission given with the intention that the licensee's use may continue only as long as the owner continues to consent to it". *GNP.*

[7] *See Gutcheon* (prescriptive easement found to lots beyond lot next to servient estate, and no suggestion owner of servient estate could see distant lots) (See Appendix to decision).

5

that the Lane was being used for something more than to access Parcel 1.[8] Plaintiff asserts that she first became aware that Tarramango Lane extended to Parcel 2 in 2001. The Court is convinced that it was not the open, notorious and visible use of the Lane that changed in 2001, but rather that Ms. Butkiewicz was first present at her property for a sufficient length of time to see what was and had been available to be seen.

Therefore, the Court finds that Defendants have established by a preponderance of the evidence that they have and have had a prescriptive easement for residential vehicular traffic over the Butkiewicz property for access to the Lilly property and to the Wright portion of Parcel 2 north of the Lilly parcel. The easement is over and across the existing gravel ways and is of sufficient width to allow large vehicles, including fire trucks, to turn from the Grove Street Extension onto Tarramango Lane. To the extent boulders placed by Plaintiff are on the existing gravel bed, they must be moved. Defendants and their successors may maintain the gravel ways in their rural state over Plaintiff's property.

Thus, Judgment is entered for the Defendants on all counts of the Plaintiff's complaint. Judgment is entered for Defendant Lilly on her Counterclaim and to Defendant Wright on Defendant Lilly's crossclaim. Judgment is entered for Defendant Wright on Count 1 of her Counterclaim. Judgment is granted to Plaintiff on Count 2 of Defendant Wright's counterclaim.

Pursuant to 14 M.R.S. § 5951, et. seq., it is declared that Defendants Lilly and Wright, and their successors, have a permanent easement for residential vehicular traffic over and across the existing ways over Plaintiff Butkiewicz's property (as described in a deed recorded in the Penobscot County Registry of Deeds, Book 6761, page 28), for purposes of access to what is now the Lilly property, as described in a deed recorded in the Penobscot County Registry of Deeds, Book 100960, page 248, and to what is referenced in this Judgment as Wright's portion of Parcel 2 north of the Lilly parcel. See Exhibits 5 and 8. It is ordered that this Judgment (or an abstract thereof, agreed upon by the parties) be recorded in the Penobscot County Registry of Deeds.

The Clerk shall enter this Judgment on the docket by reference.

Dated: July 24, 2011

_____
Ann M. Murray, Justice
Maine Superior Court

---

[8] Plaintiff's argument that the adverse use of Tarramango Lane onto Parcel 2 at the end of the deeded easement to Parcel 1 was not visible from her camp is not persuasive because it was from her own property in 2001 that Plaintiff observed traffic on Tarramango Lane that caused her to learn that travel over Tarramango Lane extended to Parcel 2. See also *Gutcheon*.

6