STATE OF MAINE                                                    SUPERIOR COURT
CUMBERLAND, ss                                                      CIVIL ACTION
                                                               DOCKET NO. RE-16-88

JUSTINE CARVER BROOKS, et al.,

                Plaintiffs              **STATE OF MAINE**
                                     **Cumberland ss Clerk's Office**
v.                                                                      ORDER

                                         MAY 19 2016
WENDY ANNIS, et al.,                  **RECEIVED**

                Defendants

 A non-jury trial in the above case, which originated in the Rumford District Court, was

held on May 2, 2016. Plaintiffs Justine Carver Brooks and Travis Brooks contend that the court

should find the existence of public and private prescriptive easements allowing them to travel

and install utilities over the old Grover Hill Road in Bethel.[1] After the trial the parties filed post-

trial briefs.

 The court finds as follows:

 The respective properties involved in this case are illustrated on the annotated tax map

admitted as Exhibit 1, a copy of which is annexed to this order. The portion of the Old Grover

Hill Road in dispute in this case ran south from the West Bethel Road (now also Route 2). The

northern portion of that road (now called the Annis Road) remains a paved public road, but that

portion terminates on property owned by defendants Wendy and Scott Annis. The remainder of

the old Grover Road – which was discontinued as a public road more than a century ago – runs

south through a portion of the Annis property. It then runs between property owned by defendant

Maureen Swaine and defendant Chadbourne Tree Farms and continues to run between the

---

[1] In their complaint plaintiffs also alleged the existence of an easement by necessity and an implied
easement by quasi-easement but counsel expressly stated that plaintiffs were only pursuing prescriptive
easement claims at trial.

Swaine property and the property now owned by the Brooks plaintiffs. This portion of the old Grover Hill roadbed is unpaved and in poor shape.

There does not appear to be any dispute that, where the old Grover Hill roadbed runs between the Swaine and Chadbourne land, Swaine and Chadbourne own approximately to the centerline of the old roadbed. In order to access their land from the West Bethel Road, therefore, the Brooks plaintiffs would have to travel down the Annis Road to where the pavement ends and then travel over a portion of the old roadbed owned by the Annises and a portion of the old roadbed owned ½ by Chadbourne and ½ by Swaine.

The Brooks plaintiffs purchased their lot (described as "Our Lot" in Exhibit 1) from Keith Durgin in August 2014. They were aware at the time they purchased that there was no deeded access over the old Grover Hill roadbed to the property.[2] They are seeking the right to travel over the old Grover Hill roadbed from the end of the Annis Road to their property and the right to install utilities along that roadbed based on the alleged existence of both a private prescriptive easement and a public prescriptive easement.

A party claiming a prescriptive easement has the burden at trial of proving by a preponderance of the evidence each of the following elements: (1) continuous use for at least twenty years; (2) under a claim of right adverse to the owner; (3) with the owner's knowledge and acquiescence, or with a use so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed. *Androkites v. White*, 2010 ME 133 ¶ 14, 10 A.3d 677. When

---

[2] Justine Brooks's mother, Claire Carver, is a real estate agent. Prior to her daughter's purchase of the property, Carver made various inquiries about the property to counsel for Durgin and some of the information she received was shared with her daughter. Brooks denied, however, that her mother was acting as her agent in connection with the transaction. Absent any additional foundation that might have established an agency relationship despite Brooks's denial, the court excluded certain emails offered by defendants that were set or received by Claire Carver but were not copied to her daughter.

2

the first and third elements are proven, a presumption will arise that the use was under a claim of right adverse to the owner. 2010 ME 133 ¶ 17.

The Brooks plaintiffs' claim of a private prescriptive easement depends on whether Keith Durgin's use of the old Grover Hill roadbed established the necessary elements listed above. The testimony at trial established that Durgin purchased the lot now owned by the Brooks plaintiffs, which shall be referred to as the Brooks lot in this order, from the L.M Davis Lumber Company in 1992, although by agreement with L.M. Davis he may have begun logging the lot sometime before his formal purchase. In order to get access to the lot in order to cut down trees on the lot, Durgin made several improvements to the old Grover Hill roadbed (bringing in gravel and repairing a culvert) between the south end of the Annis Road and the corner of his property. During the first few years he owned the Brooks lot, his trucks travelled frequently, sometimes daily, along the old Grover Hill roadbed in order to access the Brooks lot for logging purposes. This activity was open and notorious within the meaning of *Androkites* and specifically was known to Oscar Annis, who then owned the property now owned by Scott and Weedy Annis.

Durgin discussed his use of the old Grover Hill roadbed to access the Brooks lot with Oscar Annis, and Oscar Annis at least did not object.[3] Considering all of the testimony at the trial, the court finds that Durgin travelled fairly frequently over the old Grover Hill roadbed during the early 1990s and thereafter continued to access the lot on a more occasional basis except during winter months until at least 2000. Durgin's initial logging took place during the first one or two winters that he owned the lot. However, once that logging had been completed,

---

[3] Oscar Annis, who is now 87 years old, twice took the stand at the trial. At one point he stated that he had given Durgin permission to access the Brooks lot for logging in the early 1990s. At another point he was less certain and said only that he had not objected. Durgin testified that he had not sought or obtained permission but only that he had informed Annis of his intentions, essentially as a courtesy. In light of the court's findings below, the court does not have to resolve the issue of whether Durgin's use was by permission or not.

3

the evidence established that the Old Grover Hill roadbed was not plowed and was generally impassable except by snowmobile when there was snow on the ground.

There was a dispute as to whether Durgin continued to access the Brooks lot from 2000 to around 2005 for some tree-cutting and to store gravel on the lot. However, even accepting Durgin's testimony that he stored gravel on the lot and did some occasional tree-cutting in the early 2000s, that activity ended by 2005.

In the 1998-1999 time period and again in 2001 there were discussions between Durgin and Oscar Annis, Maureen Swaine's son, and representatives of Chadbourne. In those discussions, memorialized in Exhibit 15 and testified to by John Gray, Chadbourne's former manager, Durgin sought to obtain a formal right of way over the old Grover Hill roadbed in order to develop the property. Another meeting on the same subject was convened in 2005 by a lawyer representing Durgin. No agreement was ever reached.

From 2005 at the latest until 2014 there was a hiatus with respect to Durgin's use of the old Grover Hill roadbed. In mid 2014 Durgin accessed the Brooks lot again and made a few improvements to the old roadbed, which had deteriorated further in the past 10 years, in anticipation of resuming logging. However, because the Brooks plaintiffs were discussing the purchase of the lot, Durgin did not actually begin any logging activities. As noted above, the lot was sold to the Brooks plaintiffs in August 2014.

Assuming that Durgin's travel over the Annis-owned portion of the old Grover Hill roadbed starting around 1992 was not by permission of Oscar Annis, the plaintiffs have not established the 20 years of continuous use necessary to establish a private prescriptive easement. Durgin's usage of the disputed roadway started in the early 1990s, continued with less frequency

4

until 2000 – or 2005 at the latest – and did not resume until 2014.[4] To establish a prescriptive easement, the use of the disputed area must be continuous and uninterrupted. At most the evidence in this case established continuous usage by Durgin for considerably less than 20 years.[5]

The plaintiffs' claim of a public prescriptive easement, either from the southern end of the Annis road to their lot or along the Old Grover Hill roadbed as it continues south from their lot over land owned by Chadbourne, can be swiftly disposed of. The plaintiffs offered evidence of occasional use of the old Grover Hill roadbed by the public, both from the south and the north, for hiking, hunting, snowmobiling, and other recreational activities. Under Maine law, however, there is a presumption that such recreational use is by permission. *E.g., Almader v. Kennebunkport*, 2014 ME 12 ¶¶ 23-28.[6] In order to establish adversity the plaintiffs had the burden of proof to overcome the presumption of permission, and they failed to meet that burden in any way.

---

[4] Although finding that the plaintiffs have not established a necessary element of a private prescriptive easement, the court does not accept the Annises' testimony that the easement sought by the Brookses would change the character of the Annis property. Vehicles travel up and down the Annis road now, including mail and delivery and passenger vehicles that travel all the way to the Annis property or turn around at the end of the public road on the Annis property. Oscar Annis testified that at one time school buses turned around on his property. If the old roadbed were used to access a residence on the Brooks lot, the additional vehicular traffic would not alter the essential character of the neighborhood or the Annis property.

[5] The parties also dispute whether, if Durgin's use of the Old Grover Hill roadbed was sufficient to create some form of private prescriptive easement, that easement would encompass use by the plaintiffs for vehicular access to a residence to be built on the property or for the installation of utilities. Because of the court's finding that plaintiffs did not establish continuous and uninterrupted use for 20 years, the court does not reach that issue.

[6] There was also testimony that the snowmobile usage was by express permission.

5

The entry shall be:

Judgment shall be entered in favor of defendants and against plaintiffs on plaintiffs' claim of a private and/or public prescriptive easement. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: May ___ 1 ⸮, 2016

Thomas D. Warren
Justice, Superior Court

6