STATE OF MAINE                                    SUPERIOR COURT
PENOBSCOT, SS.                                     Docket No. RE-2017-0095


Charles W. Cox                      )
       and Anne Marie Rush,         )
                   Plaintiffs,      )
                                    )
                                    )
            v.                      )          **Judgment**
                                    )
                                    )
                                    )
Gilbert G. Townsend                 )
    and Lori A. Townsend, et. al.,  )
                   Defendants.      )


## Introduction

By complaint dated September 26, 2017, Plaintiffs seek to establish an undeeded right of way from a public road to property they own in Corinth, Maine. The complaint names eleven defendants, all but two of whom, Defendants Townsend, defaulted. The court conducted a bench trial on August 26, 2019, at which Plaintiffs were represented by Attorney Kirk Bloomer and Defendants by Attorney Joseph Baiungo. Testimony was presented by Plaintiff Cox, both defendants, Donald Foote, and Albert Tate. Nine exhibits were introduced by agreement.

Following submission of written arguments, the matter is in order for decision. The court thanks counsel for their efficient and cooperative presentation at trial and for their focused arguments.

## Applicable Law

Plaintiffs' complaint seeks relief in four counts. Count I presents a statutory claim pursuant to 14 M.R.S. §§ 812 and 813:

### § 812. *Acquisition of rights-of-way and easements by adverse possession; notice to prevent*

*No person, class of persons or the public shall acquire a right-of-way or other easement through, in, upon or over the land of another by the adverse use and enjoyment thereof, unless it is continued uninterruptedly for 20 years. If a person apprehends that a right-of-way or other easement in or over his land may be acquired by custom, use or otherwise by any person, class of persons or the public, he may give public notice of his intention to prevent the acquisition of such easement by causing a copy of such notice to be posted in some conspicuous place upon the premises for 6 successive days, or in the case of land in the unorganized territory, by causing a copy of such notice to be recorded in the registry of deeds for the county where his land lies, and such posting or recording shall prevent the acquiring of such easement by use for any length of*

1

*time thereafter; or he may prevent a particular person or persons from acquiring such easement by causing an attested copy of such notice to be served by an officer qualified to serve civil process upon him or them in hand or by leaving it at his or their dwelling house, or, if the person to whom such notice is to be given is not in the State such copy may be left with the tenant or occupant of the estate, if any. If there is no such tenant or occupant, a copy of such notice shall be posted for 6 successive days in some conspicuous place upon such estate. Such notice from the agent, guardian or conservator of the owner of land shall have the same effect as a notice from the owner himself. A certificate by an officer qualified to serve civil process that such copy has been served or posted by him as provided, if made upon original notice and recorded with it, within 3 months after the service or posting in the registry of deeds for the county or district in which the land lies, shall be conclusive evidence of such service or posting.*

### § 813. *Adverse obstruction on rights-of-way; interruption by notice*

*No right-of-way or other easement existing in, upon, over or through the land of another shall be extinguished by the adverse obstruction thereof, unless such adverse obstruction has been continued uninterruptedly for 20 years. A notice in writing given by the owner of such right-of-way or other easement to the person whose land is subject thereto, setting forth said owner's intention to contest the extinguishment of such right-of-way or other easement, and duly served and recorded as provided in section 812, shall be deemed an interruption of such obstruction and prevent the extinguishment of such right-of-way or other easement.*

Count II presents a common law claim for establishment of a prescriptive easement. The elements of a Plaintiffs' claims have been articulated by the Law Court as follows:

*The party claiming a prescriptive easement has the burden at trial of proving by a preponderance of the evidence each of the following elements: (1) continuous use for at least twenty years; (2) under a claim of right adverse to the owner; (3) with the owner's knowledge and acquiescence, or with a use so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed.*

Androkites v. White, 2010 ME 133, ¶ 14, 10 A.3d 677 (internal citations omitted).

Count III seeks a declaratory judgment as to the dimensions of the claimed easement and Count IV seeks damages for expenses incurred when Plaintiffs were prevented from using it.

### Analysis

This case arises out of a familiar pattern in which claims of access to rural property, once exercised as a matter of course, have come under dispute due to new ownership, perceived overburdening of hospitality, changing social mores, and other reasons. When such a dispute arises the parties try retrospectively to shape history in order to establish order and intention where none was actually made explicit.

Plaintiffs, brother and sister, own real estate with a hunting camp in Corinth. They bought the property in 2017 from Donald Foote, who had owned it since 1991. The property can be accessed by a private way that originates on a public way, then runs past Defendants' property until it connects with a passage leading to Plaintiffs' parcel.

2

The private way was unnamed until the implementation of 911 roads required it be designated, after which it became known as "Hunter Lane." Hunter Lane is paved but grassed over. Historically, Plaintiffs' property has also been accessible by another passage, Rabbits Hill Road (or "Rabbits' Path" or a similar name; several appellations were used in testimony), but that way has been rendered impassable by a beaver dam and lack of adequate maintenance.

Defendants have lived in their property, first in a mobile home, then in a house they built, since 1984. In the 1990s, Gilbert Townsend worked long hours as an employee of the Department of Transportation, but Lori Townsend stayed home with the Townsends' children and was able to observe usage of the road over the years.

Plaintiffs' claims rest primarily on the testimony of their predecessor in title. Mr. Foote taught school in Corinth for two years before he moved elsewhere to continue his career. He built the hunting camp and, over the years, used the property for hunting. He testified to various numbers of hunters coming to Corinth over the years, in pursuit of different game in different seasons. Mr. Foote testified he used Hunter Lane to move building materials into the construction site on what is now Plaintiffs' property. When his schedule permitted, he came to Corinth with some frequency; later, after he moved away, he was able to come only a few times per year. He has not hunted on the property since 2008.

Mr. Foote enjoyed friendly relations with Defendants. His use of Hunter Lane was unchallenged, and he reciprocated Defendants' courtesy by, among other things, dimming his lights when he drove by their house at night. At some point of indeterminate date (possibly 2013, after the prescriptive period allegedly ran) he sought to buy a deeded right of way but his offer was declined by Defendants.

Mr. Foote was in general an engaging and believable witness. His testimony was often vague, however, and he had limited memory of dates. Much of his memory was structured by tying specific events to other events (e.g., conversations that took place at or about the four times his camp was vandalized). His memory was challenged on critical points by both defendants: Mr. Townsend believed he had not seen Mr. Foote since 2008 and he testified he did not know the camp structure even existed until years after it was built; Ms. Townsend, who spent her days at home while the camp was being built, did not recall having seen construction materials transported by her house, which lies only a short distance from Hunter Lane.

Plaintiffs bear the burden of proof. The court cannot find the critical elements of their claims based on Mr. Foote's testimony, as supplemented by Mr. Tate, even taking all their testimony at face value. The allegedly hostile activities did not extend for twenty years; to the extent Defendants knew about them, they allowed them, permissively, as a friendly gesture; and it is not established they even knew about all the activities as they occurred.

Further undermining Plaintiffs' claims is the legal presumption of permissive use by persons who enter unposted land to hunt. See **Weeks v. Krysa**, 2008 ME 120, ¶ 15, 955 A.2d 234. Also adverse to their reconstruction of the history of both usage and owner attitudes is Mr. Townsend's testimony that an adjacent property owner named Mark

3

Roy sought and was denied a deeded easement in 2009. Although it is not conceptually inconsistent that one neighbor might acquire prescriptive access rights at the same time another is explicitly denied access, the tenor of Mr. Townsend's encounter with Mr. Roy suggested Mr. Townsend broadly held an intention to maintain control over his property. This general intention argues against Plaintiffs' position. Further testimony that was presented at trial, including that related to the timing of Mr. Townsend's posting of a no trespass notice, was not critical to the court's analysis and therefore need not be discussed.

**Judgment**

For the foregoing reasons, JUDGMENT shall enter in Defendants' favor on Counts I, II, III, and IV of Plaintiff's complaint.

The Clerk may incorporate this Order upon the docket by reference.

Dated: December 9, 2019

The Hon. Bruce C. Mallonee
Justice, Maine Superior Court

ORDER/JUDGMENT ENTERED IN THE
COURT DOCKET ON: 12-10-19

4