SARAH M. O'CONNOR

*vs.*

JULIAN F. AND HATTIE L. BEALE

Kennebec.   Opinion, December 21, 1948.

*Locke, Campbell, Reid and Hebert,* for plaintiff.

*Sanborn and Sanborn,* for defendant.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, MERRILL, JJ.

MURCHIE, J.   This action on the case was brought by the plaintiff, under R. S. 1944, Chap. 128, Sec. 16, to recover damages from the defendants for the obstruction of a right of way.   It was tried by a single justice without the intervention of a jury and his award of damages to the plaintiff carries his decision that she sustained her claim by a preponderance of evidence.   The claim is grounded in the assertion that her tenants, in property to be identified here-

after, used the way, in such an open, visible, continuous and unmolested manner, for twenty years or more, and under circumstances from which the knowledge and acquiescence of the defendants and their predecessors in title must be inferred or presumed, as to create a prescriptive right thereto. That such a right may be so acquired is undoubted. *Thompson et al.* v. *Bowes,* 115 Me. 6; 97 A. 1; 1 A. L. R. 1365; *Dartnell* v. *Bidwell,* 115 Me. 227; 98 A. 743; 5 A. L. R. 1320; *Burnham* v. *Burnham et al.,* 130 Me. 409, 156 A. 823.

The decision offers no specification of the particular twenty-year period of continuous use factually found, but such a finding, relative to some particular period, is necessarily involved in it, *Madigan* v. *Lumbert,* 136 Me. 178; 5 A. (2nd) 278, and must be tested within the well established principle that findings of fact by a single justice sitting without the intervention of a jury are final if there is competent evidence in the record to support them. *Ayer* v. *Railway Co.,* 131 Me. 381; 163 A. 270.

The case comes forward on five exceptions alleged by the defendants. The first challenges an evidence ruling which is not material in view of the fact that the exceptions must be sustained on other grounds. The others may be considered together since they assert, collectively, that the evidence did not justify a factual finding that plaintiff and her predecessors in title had used the way in that manner essential to establish a prescriptive right in any twenty-year period.

The parties are the owners of double tenement houses located on adjoining lots on Stone Street in Augusta. On December 10, 1908 both lots were owned by one Dr. Leander J. Crooker. On that day he conveyed the northerly one to a niece who lived with him. Late in the following year, or early in 1910, he, or they, had the houses constructed, on similar if not identical plans, and they rented the properties until September 9, 1915, when Dr. Crooker sold the

southerly lot to a predecessor in title of the plaintiff. The plaintiff acquired title on April 24, 1924. The northerly lot had been sold by the niece about a week earlier. Title to it came to the defendants on May 11, 1937. The issue arises in connection with the use of the way by the tenants of Dr. Crooker, and his successors in title, from late in 1909 or early in 1910 until 1943, when the way was obstructed and its use by a tenant of the plaintiff denied, temporarily.

The houses set back from the street line about twenty-five feet, disregarding porches or verandas a little more than seven feet deep extending across the full width of the fronts. They are fifteen feet apart, with front walls parallel to the street. The property line, dividing the lots, runs diagonally through points a little less than six feet northerly of the southerly house, at the front wall line, and a little more than six and a half feet southerly of the northerly one, at the rear. The way asserted is ten feet wide, according to a plan introduced as an exhibit by the plaintiff, and utilizes land on both sides of the property line.

From the time of the construction of the houses until July 1947 no owner, or tenant of any owner, forbade the use of the way to the occupants of the other house or placed any obstruction of a permanent nature on any part of the strip of land between the two houses. The defendants placed fence posts along the property line at that time, approximately ten feet apart. Except for a few short intervals of a week or more the fifteen-foot strip, or the narrower ten-foot way, accommodated vehicular traffic throughout the period from 1909, or 1910, to 1947, for the delivery of coal and wood to both houses and the removal of garbage and ashes therefrom. It was used by the owners and tenants of the northerly tenement more extensively than by the tenants of the southerly one, largely because there was a building on the northerly lot used at times as a stable or garage. The way was maintained, so far as it may be said to have been maintained at all, by the owners or tenants of the tenement on the northerly lot, spreading gravel and

ashes and removing snow. No contribution toward maintenance was ever made, or offered, by the plaintiff until April 1943, when the defendant Julian F. Beale was working on a strip of land northerly of his house, purchased in 1937, to prepare it for use as a right of way for the defendants' tenement. At that time plaintiff's husband sent a check for $25 as a contribution to maintenance, with a letter offering to pay more for either upkeep or improvement. The check was returned.

Notwithstanding the failure of the defendants and their predecessors in title to forbid the occupants of the southerly house to use the way, or to place any permanent obstruction upon it which would make such use impossible, the record establishes beyond question that they placed both signs and temporary obstructions either on their own part of the way or entirely across it in 1926 (or 1927), and thereafter on at least three occasions, two of which need not be identified. The last occasion was in 1943, already referred to, when a sign carrying the legend "Closed to trucks" was placed at the street line and a truck calling at the tenement on the southerly lot was not permitted to use the way. Among the exhibits introduced in evidence by the defendants is a picture which shows this sign and the evidence establishes definitely that it was put in place in 1943 and maintained for a few weeks. Without reference to these temporary obstructions, the record contains testimony given by both defendants, and by their immediate predecessor in title, which would have been more than sufficient to defeat the claim of the plaintiff if believed by the trier of facts. His decision indicates his rejection of it so there can be no point in repeating it here. The issue to be resolved arises in connection with the legal effect of the temporary obstruction placed in the way in 1926 (or 1927), since there can be no doubt that that which was placed at the street end of the way in 1943 was clearly sufficient to interrupt the kind of use made of the way by plaintiff's tenants and did in fact interrupt it. We have nothing to consider, therefore, except the years 1910 to 1943.

Since the temporary obstruction placed in the way by the defendants' immediate predecessor in title in 1926 (or 1927) falls midway between the commencement of the over-all period and its close, and leaves less than twenty years on either end, the question is the narrow one whether that single obstruction prevented the running of the prescriptive period. The single justice must have decided that it did not, since the fact of the placing of it is undoubted, notwithstanding the testimony of plaintiff's husband that he never saw any obstruction prior to 1943. The then owner places the date as the very last of 1926 or 1927. One of the tenants of the house on the northerly lot places it between 1925 and 1930 or 1931, but says it was closer to 1925. One of the tenants of the house on the southerly lot says it was "not too long" after the predecessor in title bought the place, which was in April 1924. On the evidence as a whole the only factual finding which could be said to have the support of competent evidence is that the way was obstructed for a week or more by defendants' predecessors in title not earlier than 1924 and not later than some date in 1929 prior to the expiration of twenty years from the construction of the double tenements. For convenience we shall refer to it as the 1926 obstruction. The 1926 obstruction took the form of wooden horses placed across the strip carrying a sign forbidding trespassing. Several witnesses agreed that the horses and sign were left in place a week or more. The former owner of the northerly lot, who placed them, testified as a witness for the defendants and asserted in direct-examination that his purpose was to protect his legal rights. In cross-examination he admitted that the time may have been in March, in the mud season, and that he might have testified in another hearing that his purpose in obstructing the way temporarily was to keep trucks from using it in muddy weather, or to stop the development of ruts. Assuming this to have been his purpose there can be no doubt that his action constituted a closing of the way or that the closing interrupted the use of it by the tenants of the plaintiff. Plaintiff's counsel, in argument, makes

much of the fact that he stated, with reference to this temporary obstruction, that he was not "closing anybody off, anyway" and that this is apparent from the fact that he was using the way more extensively than anyone else, and in a manner that would not have been available to him if the owner of the southerly lot denied him the use of that part of it within the limits of the way.

The award must rest not only in the acceptance of the testimony given by this witness in cross-examination and disregard of his earlier declaration of a purpose to protect his rights, which was the right of the trier of facts, but also in a complete disregard of the interruption of use. This is contrary to the established principle that uninterrupted use for twenty years is requisite to establish a right by prescription. *Burnham* v. *Burnham et al., supra.* The requirement that user be uninterrupted in order to develop into right was mildly emphasized by Chief Justice Appleton in *Blanchard et al.* v. *Moulton et al.*, 63 Me. 434, in his statement that one might acquire a right equivalent to a grant:

> "if he continue to use the property * * * for twenty years or more * * *."

It is more definitely emphasized in 2 Greenleaf on Evidence, Par. 539, quoted and approved in *District of Columbia* v. *Robinson,* 180 U. S. 92; 21 S. Ct. 283; 41 L. Ed. 440; and in *Crosier* v. *Brown,* 66 W. Va. 273; 66 S. E. 326; 25 L. R. A., N. S., 174:

> "In order * that the enjoyment of an easement in another's land may be conclusive of the right, it must have been * * * uninterrupted; and the *burden of proving* this is on the party claiming easement."

On the record the plaintiff cannot be said to have carried the burden of proving that the way was used by her tenants without interruption for a period of twenty years. There can be no doubt that the owner of the northerly lot interrupted the use of it by her tenants prior to the expiration of twenty years from the construction of the houses and

within twenty years of the placing of the later (1943) temporary obstruction, which was recognized by those tenants as an assertion of the right of the owner of the northerly lot to close the way.

The plaintiff having failed to establish any full twenty-year period of uninterrupted use by competent evidence, it becomes unnecessary to consider other particular issues argued by counsel such as reciprocal use; whether the particular use was permissive at its inception, when the properties were owned by an uncle and niece living together; or whether a proper foundation was laid for tacking the use of the tenants of the uncle to that of those who occupied the southerly lot while it was owned by his successors in title.

*Exceptions sustained.*