INHABITANTS OF the TOWN OF
KENNEBUNKPORT et al.

v.

Robert R. FORRESTER, Jr., et al.

Supreme Judicial Court of Maine.

Oct. 3, 1978.

---

3. Formerly the Industrial Accident Commission. For change of name statute, see Public Laws, 1978, c. 612.

**832**

Wilson, Steinfeld, Murrell, Barton & Lane by Steven Juskewitch (orally), Henry Steinfeld, Charles A. Lane, Portland, for plaintiffs.

Drummond & Drummond by John B. Emory, David N. Fisher, Jr. (orally), Portland, for defendants.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, NICHOLS and DELAHANTY, JJ.

NICHOLS, Justice.

The Plaintiffs, the Inhabitants of the Town of Kennebunkport and the selectmen of that town, appeal (1) from a judgment of the Superior Court in York County denying the Plaintiff's claim that the Town had acquired a right of way by prescription over a road and "turn-around" located on the property of the Defendants, Robert R. Forrester, Jr., and Katherine C. Forrester, in Kennebunkport; and (2) from denial by the court below of the Plaintiffs' motion for relief from that judgment, made pursuant to M.R.Civ.P. 60(b)(6).

The Plaintiffs assert that the court below erred in concluding that the unchallenged findings of fact do not establish a prescriptive right of way over Defendants' property. They further assert that that court abused its discretion in denying their motion for relief from judgment.

We deny the appeal.

In August, 1976, the Defendants acquired a parcel of land in Kennebunkport from the Kennebunkport Sea Shore Company. The land had been owned by this company for over one hundred years. For approximately the last sixty years a dirt road, known as Woodland Drive, had run across this property connecting Ocean Avenue to South Main Street in Kennebunkport. A "turn-around" was located at the intersection of this dirt road and Ocean Avenue. The Defendants blocked access to Woodland Drive and part of the "turn-around" by placing large boulders at the Ocean Avenue terminus of that dirt road.

The Plaintiffs protested that this action denied the use of a way which had been open to and in general use by the public since about 1915, and they commenced this action for declaratory and injunctive relief.

A lengthy hearing was held at which numerous witnesses testified to the use and condition of Woodland Drive over the years. The presiding justice summarized the facts with respect to Woodland Drive and the "turn-around" in this manner:

> The evidence introduced by the parties indicated that this trail and part of the so-called "turn around area" existed for a long period of time and that during that time both the trail and "the turn around" area have been used by a number of people in various ways. Over the years this trail has been, as described by the witnesses, a quiet secluded trail through a wooded area. The land in question has always been unenclosed, unimproved and unoccupied. The Court finds from the testimony of a long list of witnesses that this trail was used sporadically and only for a few times by most users and was used only for their pleasure. They used the trail for picnics, to walk their dogs, to run foxes and rabbits, to go hunting, to pick wild flowers, to pick blueberries, to drink water from the spring on the land, just for the pleasure of walking and going through the woods; to look for Christmas trees, to go parking. The Court also finds that occasionally agents of the Town of Kennebunkport would trim some of the underbrush from the trail and occasionally dump some gravel so that the road would be available to the

fire department in the event of a woods fire in the area.

The Court also finds that before Ocean Avenue was extended and relocated and became a part of State Aid Highway No. 2 that it terminated at the general point of intersection at Woodland Drive and Ocean Avenue and at that time a small turn around area was used by people primarily to turn their carts and later their vehicles around.

The Plaintiffs do not challenge the court's findings with respect to Woodland Drive, but do attack the validity of the factual findings regarding the "turn-around." They argue that the findings of fact concerning the prior use of Woodland Drive establish a prescriptive easement as a matter of law.

 The elements essential to the ripening of a prescriptive easement have been most recently set forth by our Court in *Pace v. Carter*, Me., 390 A.2d 505 (1978). A prescriptive easement is created only by a continuous user for at least twenty years under a claim of right, adverse to the owner, with his knowledge and acquiescence, or by use so open, notorious, visible and uninterrupted that knowledge and acquiescence will be presumed.[1] *See Restatement of Property* § 457 (1944).

In the instant case, inasmuch as the Plaintiffs accept the findings of the court below with respect to past uses of Woodland Drive, we have only to measure those findings by the requirements above set forth.[2]

 The justice presiding below concluded that the Plaintiffs had failed to prove by a preponderance of the evidence the several elements essential to the ripening of a prescriptive easement.

From his findings of fact he could well have concluded that the Plaintiffs had not established the required continuity of user. On very similar facts the findings of the presiding justice were upheld as not clearly erroneous in *Fitanides v. Holman*, Me., 310 A.2d 65, 68 (1973). The Town's action in occasionally clearing some brush and dumping some gravel or the irregular use of the road by the general public does not distinguish the facts here from those in *Fitanides*. *See also O'Connor v. Beale*, 143 Me. 387, 62 A.2d 870 (1948).

Alternatively, the court below could well have concluded that the Plaintiffs did not meet their burden of showing the required adversity of user. In a consistent line of cases this court has declined to hold that the mere use by the general public of wild and uncultivated land as a route for hauling seaweed, for hunting, or for mere pleasure or recreation, is sufficient to show the adverse user essential to create a prescriptive easement. *See Piper v. Vorhees*, 130 Me. 305, 312, 155 A. 556 (1931); *Littlefield v. Hubbard*, 124 Me. 299, 304, 128 A. 285 (1925); *Mayberry v. Standish*, 56 Me. 342, 353 (1868); *cf. Benner v. Sherman*, Me., 371 A.2d 420 (1977).

 We move on to the Plaintiffs' assertion pursuant to Rule 52(a), M.R.Civ.P., that the findings of fact regarding the "turn-around" are clearly erroneous.[3] They contend that the evidence showed without dis-

---

1. We have previously observed that a town road can be created by adverse user in the same manner as private easements are acquired. *See MacKenna v. Inhabitants of Town of Searsmont*, Me., 349 A.2d 760, 762 (1976) and cases cited therein.

2. There is respected authority for the proposition that in order to create a public easement, as was here alleged to exist, the adverse use must be general and not limited to a few specific individuals. *Verh v. Morris*, 410 Ill. 206, 101 N.E.2d 566, 569 (1951); *Easter v. Overlea Land Co.*, 129 Md. 627, 99 A. 893, 894 (1917). The test of a public use is not the frequency of the

use, or the number using the way, but its use by people who are not separable from the public generally. 2 *American Law of Property* § 9.50 (A. J. Casner ed. 1952). In disposing of the appeal before us, however, we are not required to distinguish between public and private easements.

3. The "clearly erroneous" test, applied in *Jacobs v. Boomer*, Me., 267 A.2d 376, 379 (1970) is appropriate for our review of the essentially factual conclusion of the court below as to the prior use of Woodland Drive.

pute that the "turn-around" was part of Ocean Avenue; and that it had been laid out by the town and had been consistently used by the public for well over twenty years. Our own review of the record does not reveal the clarity which the Plaintiffs assert. Rather, there was considerable disagreement as to the degree to which the "turn-around" area had expanded as more gravel was dumped and graded there over the last twenty years. Furthermore, there was considerable confusion as to the exact location of Ocean Avenue, a highway extending that avenue, and the end of Woodland Drive. On the record before us we cannot hold that the presiding justice's findings were clearly erroneous. He was justified in finding, as he did, that the limits of the "turn-around," prior to its expansion in recent years, were within the boundaries of the highway now running past this end of Woodland Drive.

■ Finally, as to Plaintiffs' motion for relief from the judgment, its denial represented no abuse of discretion by the court below. There was an extended hearing in this case, at which the Plaintiffs were given full opportunity to present their evidence. The Plaintiffs subsequently asked the court to receive additional evidence with no attempt to show why it had not been produced at trial. Absent any showing that due diligence had failed to produce the evidence at that trial, there was clearly no abuse of discretion in denying their motion. *See State v. Casale*, 148 Me. 312, 319–20, 92 A.2d 718 (1952); 2 R. Field, V. McKusick & L. Wroth, *Maine Civil Practice* § 60.7, p. 75 (1970). The order was complete and disposed of the present dispute between these parties.

The entry is:

Appeal denied.

Judgment affirmed.

GODFREY, J., did not sit.