MAINE SUPREME JUDICIAL COURT                              Reporter of Decisions
Decision:      2014 ME 12
Docket:        Yor-12-599
Argued:        November 19, 2013
Decided:       February 4, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

ROBERT F. ALMEDER et al.

v.

TOWN OF KENNEBUNKPORT et al.

GORMAN, J.

[¶1]  Robert F. Almeder and twenty-eight other owners of property fronting Goose Rocks Beach in Kennebunkport (the Beachfront Owners) appeal from a decision of the Superior Court (York County, *Brennan, J.*) awarding the public a recreational easement over both the intertidal and dry sand portions of the Beach. The Beachfront Owners argue that the court erred in (1) permitting the State and neighboring landowners to intervene, (2) awarding a prescriptive easement and an easement by custom to the public users of the beach, and (3) determining that the public had rights concerning the intertidal zone of the Beach pursuant to the public trust doctrine.  The State cross-appeals,[1] arguing that the court erred in limiting the

---

[1] The Town also cross-appealed, but does not argue that any portion of the court's judgment was error. The trial court permitted roughly 200 owners of nearby properties to intervene, as well as the Surfrider Foundation.  The Conservation Law Foundation, the Maine Snowmobile Association, and the Maine Forest Products Council also have filed amicus curiae briefs.

activities allowed in the intertidal zone pursuant to the public trust doctrine. We vacate the judgment.

## I. BACKGROUND

[¶2]  Goose Rocks Beach is a two-mile stretch of beach located in Kennebunkport.[2] There are 110 parcels of property directly abutting the beach owned by ninety-five separate owners. Nine of the lots are owned by either the Town or the Kennebunkport Conservation Trust. The Beach has five public access points and 173 public parking spaces on two abutting roads.

[¶3]  In October of 2009, the Beachfront Owners[3] initiated proceedings in the Superior Court against the Town and all others who claimed any title or right to use the Beach. Each Beachfront Owner sought (1) a declaratory judgment affirming his or her ownership and exclusive right to use that portion of the Beach abutting his or her parcel down to the mean low-water mark, "subject only to the public rights of usage in the Intertidal Property established by the Colonial Ordinance of 1647," and (2) to quiet title to his or her claimed Beach property.

---

[2]  The law treats a beach as having three discrete areas: "the submerged land below the mean low-water mark," *McGarvey v. Whittredge*, 2011 ME 97, ¶ 13, 28 A.3d 620; the intertidal zone (wet sand), consisting of the shore and flats between the mean low-water mark and the mean high-water mark, to the extent that distance does not exceed one hundred rods, *Flaherty v. Muther*, 2011 ME 32, ¶ 1 n.2, 17 A.3d 640; and the upland (dry sand) above the mean high-water mark, *id*. ¶ 2 n.3. Unless otherwise noted, "the Beach" refers to the intertidal zone and the upland.

[3]  The number of Beachfront Owners has varied throughout the litigation. After determining that all ninety-five owners of beachfront parcels were necessary parties to the litigation, the court ordered service of the complaint on each pursuant to M.R. Civ. P. 19(a). Although a few joined in the complaint, many took no position on the matter. Others have voluntarily dismissed their complaints or conveyed their property to others in the meantime.

[¶4]  The Town asserted nine counterclaims alleging its ownership of the Beach and the public's right to use the Beach.  Approximately 200 owners of property located in the Town's Goose Rocks Zone, but not directly on the Beach (the Backlot Owners) also intervened and filed counterclaims.[4]  Finally, the State intervened as a defendant to represent the public's use of the intertidal zone pursuant to the public trust doctrine, but did not assert any of its own causes of action.  In all, the various parties asserted some sixty-three causes of action; by the time of trial, only sixteen of these remained for decision.[5]

[¶5]  With the agreement of the parties, the court scheduled a bifurcated trial to first address the use-related claims that were still pending, and saved for the second portion of trial those claims related to title.  In August and September of 2012, the court heard the first portion of the matter in a two-week trial during which sixty-six witnesses testified.  The causes of action before the court in that first portion of the bifurcated trial were (1) the Town's and the Backlot Owners' claims alleging prescriptive easements over the entirety of the Beach, and (2) the

---

[4]  The law firm of Taylor, McCormack & Frame, LLC, represents the vast majority of the Backlot Owners; these parties are referred to in the record as the "TMF Defendants."  Alexander M. and Judith A. Lachiatto and Richard J. and Margarete K.M. Driver are Backlot Owners not represented by Taylor, McCormack & Frame.

[5]  The remaining forty-seven claims were dismissed, withdrawn, or disposed of by summary judgment. None of those decisions is challenged in this appeal.

4

Town's claim for an easement by custom.[6] Despite its failure to assert a counterclaim or cross-claim, the State was permitted to offer evidence regarding the application of the public trust doctrine to the intertidal zone of the Beach.

[¶6] By partial judgment dated October 16, 2012, the court made the following findings of fact.[7] In colonial times, the Beach was used as a public highway as well as for harvesting seaweed, clamming, driving livestock, and providing access to marshland for cutting hay. Starting in the 1800s, the Beach became a popular tourist destination, resulting in the construction of hotels and guesthouses, a bowling alley, a casino, shops, restaurants, and "auto-trailer" camps on the land abutting the Beach. The court found that from the late 1800s through the 1940s, the Beach was used "for a full range of recreational activities, including walking, swimming, sun bathing and a variety of beach related games." After a fire swept through the area in 1947, the rebuilt properties around the Beach had a more residential and less commercial character, but the Beach was still used for recreational activities.

[¶7] The Town began imposing regulations on the use of the Beach in the 1700s, including some regarding livestock, clamming, and seaweed harvesting.

---

[6] Reserved for the second portion of trial were the Beachfront Owners' claims for a declaratory judgment and to quiet title; the Town's claims for fee simple ownership, adverse possession, acquiescence, dedication and acceptance, deeded easement, and implied/quasi-easement; and some of the Backlot Owners' claims for easement by estoppel.

[7] As the trial court noted, it did "not undertake to summarize each witness's testimony."

More recently, the Town has established regulations concerning dogs and fires on the Beach and parking near the Beach. From the 1950s to the 1990s, the Town provided lifeguard service for the Beach; the lifeguard stand was located near the "public" part of the Beach, but the lifeguards patrolled the full length of the Beach and gave swimming lessons to the general public. In 1994, the Town discontinued the lifeguard service and "replaced it with a police officer dedicated to serve the Beach." The Town has also used its funds to promote the Beach to tourists and to provide bus service to and supervision for children at the Beach during the summers. The court found that "from the early 1900[s] the Town has consistently encouraged and facilitated the use of the Beach by the general public."

[¶8] The court found that "while people tended to use the area in front of their own properties or near a public access point most frequently, nearly all used the Beach 'from river to river' frequently depending on what activity was being undertaken at the time." Although the use of the Beach is most intense in the areas of the Beach owned by the Town, people regularly use the full length of the Beach year-round to walk, play in tidal pools, collect sand dollars, play softball, ride horses, and cross-country ski, and to access the water for boating, water-skiing, windsurfing, kayaking, snorkeling, rafting, paddleboarding, and tubing.

[¶9] Beachgoers have not asked the Beachfront Owners for permission to use the Beach for these general recreational purposes because they felt they had a

right to use the Beach for such purposes. They have asked permission from the relevant Beachfront Owners for activities beyond "ordinary beach type recreational uses," however, such as storing boats on the dry sand or hosting a party or wedding on the Beach.

[¶10]  The Beachfront Owners have requested that beachgoers leave the property when beachgoers were drinking alcohol or engaging in loud, disruptive, or potentially dangerous activities. Rarely has a Beachfront Owner otherwise ever requested that a beachgoer "move along." Testimony indicated that it would be impractical to ask beachgoers engaged in ordinary recreational activity to leave.

[¶11]  Although several Beachfront Owners have, in recent years, posted 'no trespassing' signs around their properties, the signs were intended to keep people off of the Beachfront Owners' landscaped property and private access ways rather than any portion of the sand itself. As to the wet or dry sand portions of the Beach, the court found that beachgoers would have ignored the signs and continued to use the Beach as they always had. Many of the Beachfront Owners also have offered their homes for rent, and have not given their tenants any instructions that limit their use of the Beach.

[¶12]  On these facts, the court determined that the Town, the Backlot Owners, and the public enjoy a public prescriptive easement as well as an easement by custom to engage in general recreational activities on both the wet and

dry sand portions of the entire Beach.[8] The court also found that the State had established, pursuant to the public trust doctrine, that the public's right to fish, fowl, and navigate includes the right to cross the intertidal zone of the Beach to engage in all "ocean-based" activities, which it defined as such "waterborne activities as jet-skiing; water-skiing; knee-boarding or tubing; surfing; windsurfing; boogie boarding; rafting; tubing; paddleboarding; and snorkeling," but not including "swimming, bathing or wading; walking; picnicking or playing games." The court denied the Beachfront Owners' motion for additional findings of fact and conclusions of law. *See* M.R. Civ. P. 52(b).

[¶13] Although the second portion of the bifurcated procedure remained for trial and decision, the court granted the Town's, the TMF Defendants', and the State's motions for entry of a final judgment pursuant to M.R. Civ. P. 54(b)(1) as to prescriptive easement, easement by custom, and the public trust doctrine.[9] The Beachfront Owners timely appealed pursuant to 14 M.R.S. § 1851 (2013) and M.R. App. P. 2. The Town and the State cross-appealed. *See* M.R. App. P. 2(b)(3).

---

[8] Meanwhile, the Town, some of the Backlot Owners, and some of the Beachfront Owners reached a settlement in which they agreed that the joining Beachfront Owners held title to those portions of the Beach described in their deeds, but granted to the Backlot Owners and the public a right to use their portions of the Beach with certain restrictions, in exchange for dismissal of the Town's and Backlot Owners' prescriptive easement claims against those Beachfront Owners.

[9] The Beachfront Owners objected to the entry of a final judgment in the trial court, but they had withdrawn that objection by the time of oral argument in this Court.

## II. DISCUSSION

[¶14]  The Beachfront Owners challenge the Superior Court's award to the Town, the public, and the Backlot Owners of an easement over both the wet and dry sand portions of the entirety of Goose Rocks Beach pursuant to theories of prescription and custom, and its articulation of the extent of the public trust rights in the intertidal zone.  In its cross-appeal, the State contends that the court erred in limiting the scope of the activities allowed in the intertidal zone.  We first address two threshold issues—the finality of the judgment and standing.

A.    Threshold Issues

1.     Entry of a Final Judgment

[¶15]  The first preliminary issue is whether the court erred in entering a final judgment pursuant to M.R. Civ. P. 54(b).[10]  In deciding whether to reach the merits of an appeal, we consider, as the Superior Court did, such factors as:

- The relationship of the adjudicated and unadjudicated claims;

- The possibility that the need for review may be mooted by future developments in the trial court;

---

[10]  Maine Rule of Civil Procedure 54(b)(1) provides, in pertinent part:

Except as otherwise provided in paragraph (2) of this subdivision and in Rule 80(d), when more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

- The chance that the same issues will be presented to us more than once;

- The extent to which an immediate appeal might expedite or delay the trial court's work;

- The nature of the legal questions presented as close or clear;

- The economic effects of both the appeal and any delays on all of the parties, including the parties to the appeal and other parties awaiting adjudication of unresolved claims; and

- Miscellaneous factors such as solvency considerations, the res judicata or collateral estoppel effect of a final judgment and the like.

*Marquis v. Town of Kennebunk*, 2011 ME 128, ¶ 13, 36 A.3d 861 (alteration omitted) (quotation marks omitted). With particular emphasis on the first, fourth, and sixth factors listed above, we note the extraordinary circumstances of this case, which already has cost the parties and the taxpayers substantial time and resources. We discern no abuse of discretion in the court's entry of a final judgment as to the parties' use claims pursuant to Rule 54(b). *See Marquis*, 2011 ME 128, ¶¶ 12-13, 36 A.3d 861. Therefore, we address the court's decision on its merits.

2.      Intervention of the Backlot Owners

[¶16]   The second threshold issue is the standing of the Backlot Owners, whom the Beachfront Owners contend were not proper parties to the litigation. The Backlot Owners moved to intervene pursuant to M.R. Civ. P. 24, which allows a party to intervene as of right if provided by statute or if that party

claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

M.R. Civ. P. 24(a). A party may intervene by permission if the "applicant's claim or defense and the main action have a question of law or fact in common." M.R. Civ. P. 24(b). The court determined that the Backlot Owners had standing in the litigation based on

their location [in relation] to the beach, their treatment of the beach as if it were their own, their ability to access the beach without permits (parking), their ability to rent their homes based on their proximity to the beach, their inflated tax assessed values based on their location and their ability to access the beach through various public and private rights of way.

(Alterations omitted) (quotation marks omitted). We review the court's decision to allow the Backlot Owners to intervene for errors of law or an abuse of discretion. *State v. MaineHealth*, 2011 ME 115, ¶ 7, 31 A.3d 911.

[¶17] Our review of the record indicates that, ultimately, the Backlot Owners' motion to intervene was erroneously analyzed as a matter of general standing rather than as a matter of standing to intervene pursuant to Rule 24. When their motion is properly considered through the lens of Rule 24, the Backlot Owners did not, as a matter of law, meet the requirements of Rule 24, either by right or by permission. To the extent any Backlot Owner sought a private

easement over any Beachfront Owner's property,[11] none sufficiently pleaded or proved the elements necessary to obtain an easement as to any specific parcel of Beach property, as we will discuss in further detail below. To the extent the Backlot Owners instead sought to establish a public easement to the Beach, those rights were identical to those claimed by the public, and the Town more than adequately represented those public rights. Notwithstanding their proximity to the Beach, the Backlot Owners did not demonstrate any interest in the Beach itself—as opposed to any paths leading to the Beach in which they might claim an interest— beyond that of any member of the public who has a history of using the Beach or, even more broadly, of any person who happens to live near a scenic location. With regard to this aspect of the litigation, the Backlot Owners served only to add to its expense and delay. We therefore conclude that the Backlot Owners are not proper parties to the litigation, and we vacate the court's decision permitting the Backlot Owners to intervene.

B.    Public Easements

[¶18]   The viability of a type of easement and the evidence required to establish that easement are matters of law we review de novo. *See Androkites v. White*, 2010 ME 133, ¶ 12, 10 A.3d 677. We review the facts supporting the court's conclusions for clear error, and will uphold the court's findings unless

---

[11]   The Backlot Owners asserted claims of easement by prescription, by estoppel, and by implication.

"there is no credible evidence on the record to support them or the court bases its findings of fact upon a clear misapprehension of the meaning of the evidence." *Baptist Youth Camp v. Robinson*, 1998 ME 175, ¶ 7, 714 A.2d 809 (alterations omitted) (quotation marks omitted).

### 1. Easement by Prescription

[¶19] "An easement is a right of use over the property of another" that may be created by any one of several means. *Stickney v. City of Saco*, 2001 ME 69, ¶ 31, 770 A.2d 592. Among them, 14 M.R.S. § 812 (2013) provides for the creation of an easement by prescription: "No person, class of persons or the public shall acquire a right-of-way or other easement through, in, upon or over the land of another by the adverse use and enjoyment thereof, unless it is continued uninterruptedly for 20 years." Pursuant to section 812 and the "extensive body of case law" interpreting and applying it, it is the burden of the party claiming a prescriptive easement to prove, by a preponderance of the evidence, three categories of facts regarding his use of another's property. *Androkites*, 2010 ME 133, ¶¶ 13-14, 10 A.3d 677.

[¶20] First, the claimant's use must be "under a claim of right adverse to the owner." *Id.* ¶ 14. Adversity is established by evidence that the claimant has used the property (1) in the absence of the owner's express or implied permission, and (2) "as the owner would use it, disregarding [the owner's] claims entirely, using it

as though he own[s] the property himself" (3) such that the use "provided the owner[] with adequate notice that the owner's property rights are in jeopardy."[12] *Lyons v. Baptist Sch. of Christian Training*, 2002 ME 137, ¶¶ 17, 26, 804 A.2d 364 (alterations omitted) (quotation marks omitted). Proof of "a heated controversy or a manifestation of ill will" is not required. *Id.* ¶ 26 (quotation marks omitted).

[¶21] Second, the claimant's use must be with the owner's knowledge and acquiescence. *Androkites*, 2010 ME 133, ¶ 14, 10 A.3d 677. Acquiescence is "consent by silence." *Dartnell v. Bidwell*, 115 Me. 227, 230, 98 A. 743 (1916); *see Stickney*, 2001 ME 69, ¶ 23, 770 A.2d 592 (holding that acquiescence refers to "passive assent or submission to the use, as distinguished from the granting of a license or permission given with the intention that the licensee's use may continue only as long as the owner continues to consent to it" (quotation marks omitted)). Knowledge and acquiescence may be established either by proof of actual knowledge and acquiescence, or by proof of a use "so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed."[13] *Androkites*, 2010 ME 133, ¶ 14, 10 A.3d 677; *see Taylor v. Nutter*, 687 A.2d 632, 635

---

[12] At one time, adversity also required proof of the claimant's intent to unseat the owner's claim to the property. *See, e.g.*, *Lyons v. Baptist Sch. of Christian Training*, 2002 ME 137, ¶¶ 17, 26, 804 A.2d 364; *Jordan v. Shea*, 2002 ME 36, ¶ 23, 791 A.2d 116. We have since noted the elimination of the subjective intent requirement for prescription claims in order to parallel the absence of such a requirement for the adversity element in adverse possession claims. *See Androkites v. White*, 2010 ME 133, ¶ 16 n.7, 10 A.3d 133 (citing *Dombkowski v. Ferland*, 2006 ME 24, ¶¶ 23 n.6, 24, 893 A.2d 599).

[13] The court found actual, not presumed, acquiescence, and thus the elements of presumed acquiescence are not at issue in this appeal.

14

(Me. 1996). Evidence of acquiescence may be in the form of physical acts or statements, and nonacquiescence "may be evidenced by verbal protest alone."[14] *Noyes v. Levine*, 130 Me. 151, 152, 154 A. 78 (1931); *see Dowley v. Morency*, 1999 ME 137, ¶ 24, 737 A.2d 1061; *Dartnell*, 115 Me. at 231, 98 A. 743 ("[D]enials and remonstrances, on or off the land are sufficient to rebut acquiescence, and work an interruption."); *Rollins v. Blackden*, 112 Me. 459, 467, 92 A. 521 (1914) ("[O]rdinarily the law does not require one to use force to assert his rights." (quotation marks omitted)). Acquiescence differs from adversity in that adversity regards the actions of the claimant, whereas acquiescence looks to the actions of the owner. *See* 4 Richard R. Powell, *Powell on Real Property* § 34.10[3][a] & n.38, at 34-102 (Michael Allan Wolf ed., 2005).

[¶22] Third, a claimant must establish his continuous use of the property for at least twenty years. 14 M.R.S. § 812; *Androkites*, 2010 ME 133, ¶ 14, 10 A.3d 677. Continuous use "occur[s] without interruption." *Stickney*, 2001 ME 69, ¶ 18, 770 A.2d 592 (quotation marks omitted). It does not necessarily require daily, weekly, or even monthly use, but instead "requires only the kind and degree of occupancy (i.e., use and enjoyment) that an average owner would make of the property." *Id.*; *see also Androkites*, 2010 ME 133, ¶ 15 n.5, 10 A.3d 677. The

---

[14] As a statutory matter, a finding of acquiescence is precluded when the owner posts a notice of his nonacquiescence in a conspicuous place on his property for six successive days, records such a notice in the registry of deeds, or serves a potential claimant with the notice in the manner of civil process. 14 M.R.S. § 812 (2013); *see Dartnell v. Bidwell*, 115 Me. 227, 232, 98 A. 743 (1916).

prescriptive period includes any twenty-year span in which adversity and acquiescence have been continuously maintained. *Eaton v. Town of Wells*, 2000 ME 176, ¶ 39, 760 A.2d 232.

[¶23] We begin our analysis of whether the trial court erred in concluding that the public has a prescriptive easement concerning Goose Rocks Beach with the court's adversity determination, which we conclude is dispositive. Essential to our consideration of adversity in cases involving public recreational easements is the presumption of permission. We have long recognized that public recreational uses are presumed to be undertaken with the permission of the landowner, thereby defeating the adversity element of a prescription claim.[15] *Lyons*, 2002 ME 137, ¶ 19, 804 A.2d 364; *Eaton*, 2000 ME 176, ¶ 32, 760 A.2d 232; *S.D. Warren Co. v. Vernon*, 1997 ME 161, ¶ 16, 697 A.2d 1280; *Town of Manchester v. Augusta Country Club*, 477 A.2d 1124, 1130 (Me. 1984); *Inhabitants of the Town of Kennebunkport v. Forrester*, 391 A.2d 831, 833 (Me. 1978); *Piper v. Voorhees*, 130 Me. 305, 312, 155 A. 556 (1931); *Littlefield v. Hubbard*, 124 Me. 299, 304, 128 A. 285 (1925); *Mayberry v. Inhabitants of Standish*, 56 Me. 342, 353 (1868).

---

[15] In the case of a *private* prescriptive easement, if the claimant can establish the elements of acquiescence and continuous use for twenty years, adversity is presumed. *Androkites*, 2010 ME 133, ¶¶ 14, 17, 10 A.3d 677; *Lyons*, 2002 ME 137, ¶ 18, 804 A.2d 364. Nevertheless, "the presumption will not arise if there is an explanation of the use that contradicts the rationale of the presumption," such as when the user is a family member of the owner. *Androkites*, 2010 ME 133, ¶¶ 17-18, 10 A.3d 677; *Jacobs v. Boomer*, 267 A.2d 376, 378 (Me. 1970) (stating that the presumption of adversity applies unless the use is "contradicted or explained" (quotation marks omitted)). In addition, the twenty-year prescriptive period may be established by the tacking together of periods of use, but only by those with whom the claimant is in privity. *See Flaherty*, 2011 ME 32, ¶ 81, 17 A.3d 640; *Kornbluth v. Kalur*, 577 A.2d 1194, 1195 (Me. 1990).

[¶24]   The presumption of permission derives from the "open lands tradition" that Maine shares with a minority of other states.  *Weeks v. Krysa*, 2008 ME 120, ¶ 15, 955 A.2d 234; *D'Angelo v. McNutt*, 2005 ME 31, ¶ 11, 868 A.2d 239; *S.D. Warren Co.*, 1997 ME 161, ¶ 16, 697 A.2d 1280.   This tradition recognizes the State's desire to encourage the hunting, hiking, and other outdoor activities for which Maine is celebrated and on which much of Maine's economy is based.  *See Lyons*, 2002 ME 137, ¶¶ 14, 27, 804 A.2d 364; *see also* 5 M.R.S. § 6200 (2013) (stating that "the continued availability of public access to . . . recreation opportunities and the protection of the scenic and natural environment are essential for preserving the State's high quality of life"); 12 M.R.S. § 10108(4-A)(A)(1)-(2) (2013) (providing that the landowner relations program within the Department of Inland Fisheries and Wildlife "must . . . [e]ncourage landowners to allow outdoor recreationists access to their property to hunt, fish or engage in other outdoor recreational pursuits" and must "[f]oster good relationships between landowners and outdoor recreationists").

[¶25]  The presumption recognizes that public recreational use "is consistent with, and in no way diminishes, the rights of the owner in his land."  *Lyons*, 2002 ME 137, ¶ 19, 804 A.2d 364 (quotation marks omitted).   Particularly for "land [that] is not being actively used by its owner, the claimant's use can be better regarded as permissive until affirmatively shown to be adverse."   4 Richard R.

Powell, *Powell on Real Property* § 34.10[2][c], at 34-95 to 34-96. Thus, the presumption offers a double benefit of protecting landowners from equitable claims to the use of their properties (as well as to their titles) while allowing the public to continue to use the property for recreational purposes. *See* 14 M.R.S. § 159-A(3) (2013) (limiting landowner liability for the recreational use of private property); *Clickner v. Magothy River Ass'n*, 35 A.3d 464, 484 (Md. 2012) ("In the United States with its great land areas[,] courts affirm that harmless trespasses should not be discouraged and that it would be unfair to penalize the generous owner." (alteration omitted) (quotation marks omitted)). Finally, the presumption reflects our long-standing disapproval of public recreational easements by prescription:

> In a consistent line of cases this court has declined to hold that the mere use by the general public of wild and uncultivated land as a route for hauling seaweed, for hunting, or for mere pleasure or recreation, is sufficient to show the adverse [use] essential to create a prescriptive easement.

*Forrester*, 391 A.2d at 833.

[¶26] Although we have sometimes referred to the presumption as applicable to "wild and uncultivated" land, *id.*, the "wild and uncultivated" language has never been employed as a precise test. In 1868, for example, we held that "[t]he open and unenclosed condition of the land, a sandy, pitchpine, blueberry plain of trifling value, was a matter from which it might be presumed that the use

18

was permissive." *Mayberry*, 56 Me. at 353. We have otherwise applied the presumption to land characterized as "unposted open fields or woodlands" and "unenclosed, unimproved and unoccupied" land. *Lyons*, 2002 ME 137, ¶ 19, 804 A.2d 364; *Forrester*, 391 A.2d at 832-33 (quotation marks omitted); *see Shadan*, 1997 ME 187, ¶¶ 2, 7, 700 A.2d 245 (presuming permission as to an access road between homes in a subdivision).

[¶27] To the extent the applicability of the presumption was uncertain, we clarified in *Lyons* that the presumption of permission is not dependent on the type of land at issue (wild and uncultivated, for example), but instead on how the public uses the land (for recreation). 2002 ME 137, ¶¶ 20-25, 804 A.2d 364. Indeed, we and other courts specifically have applied the presumption to cases involving public recreational use of private beaches.[16] *See, e.g.*, *Augusta Country Club*, 477 A.2d at 1126, 1130 (applying the presumption to an action regarding a sand beach next to a golf course); *Littlefield*, 124 Me. at 304, 128 A. 285 (presuming permission as to public use of "unenclosed seashore property"); *Clickner*, 35 A.3d at 467, 484-86 (presuming permission for public use of a beach on a privately-owned island). In Maryland, for example, the public's recreational use of

---

[16] The Town's reliance on *Eaton v. Town of Wells*, 2000 ME 176, 760 A.2d 232, to support its argument that the presumption of permission does not apply to beaches is understandable, but unfounded. In *Eaton*, we affirmed the trial court's grant of a public prescriptive easement over Wells Beach. *Id*. ¶ 1. In our decision, we referred to the presumption of permission, but it is not at all clear that we applied it. *Id*. ¶¶ 32-40. If our decision in *Eaton* caused confusion on this point, we issued our opinion in *Lyons* two years later, clarifying that the presumption of permission must indeed be applied regardless of the nature of the land. 2002 ME 137, ¶¶ 20-25, 804 A.2d 364.

a privately-owned beach was "presumed to have been a product of the *permissive* indulgence of its owners." *Clickner*, 35 A.3d at 485. "To hold otherwise would galvanize owners into fencing or otherwise obstructing their beaches in order to avoid the assertion of public prescriptive rights, feasibly creating a barricade across [the] shoreline." *Id*. This is a "consequence [that] surely ought not to be desired by anyone." *Id*. (quotation marks omitted).

[¶28]  In sum, the presumption of permission must be applied in any matter in which a claimant seeks a public recreational prescriptive easement. *Lyons*, 2002 ME 137, ¶ 24, 804 A.2d 364. When the presumption is applied, the burden of proof is on the claimant to rebut the presumption of permission in order to establish adversity. *Id.* ¶ 25.

[¶29]  There can be no dispute that this matter involves a claimed public recreational prescriptive easement over the entirety of the Beach. The Town specifically alleged that "the public[] . . . has acquired prescriptive rights in Goose Rocks Beach," and the court found as much in awarding a right to "general recreational activities on the entirety of Goose Rocks Beach, both wet and dry sand." Thus, this is precisely the type of matter in which Lyons requires that the presumption of permission be applied.

[¶30]  Although the court did note the existence of a presumption of permission, it evaluated adversity without affording the Beachfront Owners the

benefit of the presumption. The failure to apply the presumption of permission was an error, and it was an error that affected the court's view of the significance of its own factual findings. We need not remand the matter for the trial court to consider its findings in light of the application of the presumption of permission, however, because we conclude that, as a matter of law, there was insufficient evidence to determine that the Town rebutted the presumption.

[¶31] Although the court did not distinguish its findings as to adversity and acquiescence, we discern only one finding relevant to its adversity determination, namely, that the Town has spent money on the Beach to provide public conveniences and increase tourism, and has established regulations for parking and other uses at the Beach. Similarly, in *Augusta Country Club*, the town had "spent both time and money to keep the right-of-way under repair and to assist with the maintenance and security of the beach," which, given the presumption of permission, we held constituted "voluntary actions . . . taken subordinate to the right of ownership of the [owner] in its beach." 477 A.2d at 1130.

[¶32] As a matter of law, this evidence, which was the only evidence on which the trial court relied in determining adversity, is not sufficient to overcome the presumption of permission that is applied to the public's recreational use of the entirety of Goose Rocks Beach, including both wet and dry sand. The lack of sufficient evidence supporting the element of adversity precludes the grant of a

prescriptive public easement to the Beach, and thus we need not consider the evidence supporting the remaining elements of the Town's public prescriptive easement claims.

[¶33]  Furthermore, the lack of specific evidence or findings as to each of the Beachfront Owners' parcels at issue would require us to vacate the judgment in any event.[17]  It is in the very nature of an equitable claim to property that persons may "only acquire that property which they actually possessed."  *D'Angelo*, 2005 ME 31, ¶ 1, 868 A.2d 239; *see McGeechan v. Sherwood*, 2000 ME 188, ¶ 54, 760 A.2d 1068 (agreeing that the adverse use of some portion of property does not equate to adverse use of the entire property in the absence of evidence to that effect); *see also Opinion of the Justices*, 649 A.2d 604, 610 (N.H. 1994) ("[P]rescriptive easements, by their nature, can be utilized only on a tract-by-tract basis . . . ." (quotation marks omitted)); *State ex rel. Thornton v. Hay*, 462 P.2d 671, 676 (Or. 1969) ("Strictly construed, prescription applies only to the specific tract of land before the court, and doubtful prescription cases could fill the courts for years with tract-by-tract litigation."); 4 Richard R. Powell, *Powell on Real Property* § 34.11[6], at 34-129.  As a matter of law, generalized testimony regarding walks along the entire length of the Beach and findings about use of the Beach "from river to river" cannot establish the elements of a prescriptive

---

[17]  Although the trial court did not determine that the Backlot Owners had any private easements, this same failure of proof as to specific parcels would have defeated any such private easement claims.

easement specific to any Beachfront Owner or any specific parcel of Beach property. Thus, the lack of evidence or findings of use specific to each Beachfront Owner's parcel is an alternative basis on which we vacate the judgment, both as to the Town and as to the Backlot Owners.[18]

2.    Easement by Custom

[¶34]  We also vacate the court's award of an easement by custom over the Beach. Custom was developed in English common law to account for usage that "lasted from time immemorial, without interruption and as a right," and that was "reasonable, certain, peaceably enjoyed and consistent with other customs and laws." 4 Richard R. Powell, *Powell on Real Property* § 34.11[6], at 34-132 (quotation marks omitted). It is "largely a dead doctrine in the United States" because "[i]t has been argued that no American custom could have lasted long enough to be immemorial, and that we have established methods for claiming and recording rights in land" that no longer necessitate employment of the doctrine. 4 Richard R. Powell, *Powell on Real Property* § 34.11[6], at 34-132 (footnotes omitted). Although presented with several opportunities to do so through almost

---

[18]  Our decision in *D'Angelo v. McNutt*, 2005 ME 31, ¶¶ 8-9, 868 A.2d 239—in which we held, in the absence of a motion for findings of fact and conclusions of law pursuant to M.R. Civ. P. 52, that the court could infer from the evidence that a party claiming property by adverse possession used and possessed the entire parcel at issue—is distinguishable on this point. In that case, the property claimed was all owned by one record owner. *D'Angelo*, 2005 ME 31, ¶ 1, 868 A.2d 239. A review of the trial court decision reveals that it followed a process that would more than have satisfied the parcel-by-parcel analysis we require as to any public recreational easement on Goose Rocks Beach. *D'Angelo v. McNutt*, CUMSC-CV-2001-678 (Me. Super. Ct., Cum. Cty., Apr. 1, 2004) (Humphrey, D.C.J.).

two hundred years of land use litigation, we have never recognized an easement by custom as a viable cause of action in Maine. *Bell v. Town of Wells*, 557 A.2d 168, 179 (Me. 1989) (noting that "[t]here is a serious question whether application of the local custom doctrine to conditions prevailing in Maine near the end of the 20th century is necessarily consistent with the desired stability and certainty of real estate titles"); *Piper*, 130 Me. at 311, 155 A. 556 ("In Maine, there never has been affirmation of the recognition of a right of way by custom."); *see also Augusta Country Club*, 477 A.2d at 1129 n.7; *Hill v. Lord*, 48 Me. 83, 98 (1861)*; Littlefield v. Maxwell*, 31 Me. 134, 141 (1850); Op. Me. Att'y Gen. 80-108 ("An easement by custom is of doubtful validity in the State of Maine, and therefore cannot be used as a theory upon which to create public access to public lots."); 3 Herbert T. Tiffany & Basil Jones, *The Law of Real Property* § 935, at 624 (3d ed. 1939) (noting that some jurisdictions have held that "rights to use private land cannot thus be created by custom, for the reason that they would tend so to burden land as to interfere with its improvement and alienation, and also because there can be no usage in this country of an immemorial character"). Our refusal to recognize an easement by custom also comports with the decisions of other jurisdictions. *See, e.g., Graham v. Walker,* 61 A. 98, 99-100 (Conn. 1905) ("There being no such thing in Connecticut as a personal right of way established by custom . . . ."); *see also Attorney General ex rel. Adams v. Tarr*, 19 N.E. 358, 363 (Mass. 1889)

(stating that "a right by custom to maintain a building or permanent structure upon the land of another [can]not be acquired").

## C. Public Trust Doctrine

[¶35]   Finally, notwithstanding the court's application of a public prescriptive easement to the intertidal zone (which we herein vacate) the court went on to declare separately the public's rights in the intertidal zone stemming from the public trust doctrine.[19]  That determination is premature.  The court's determination of the scope of the public's right to use the intertidal zone pursuant to the public trust doctrine must be vacated because only the Beachfront Owners' declaratory judgment claim even implicates the public trust, and the parties have not yet litigated that portion of the case.  In addition, as noted earlier, the State did not file a claim for a declaratory judgment or any other cause of action raising the public trust doctrine.  We note also that the presumption of permission applies to the intertidal zone as well as to the dry sand for all general recreational activities.[20]

---

[19]  The public trust doctrine states that "the owner of shoreland above the mean high water mark presumptively [holds] title in fee to intertidal land subject only to the public's right to fish, fowl, and navigate." *Bell v. Town of Wells*, 557 A.2d 168, 171 (Me. 1989) (citing *Storer v. Freeman*, 6 Mass. (1 Tyng) 435, 438 (1810)); *see McGarvey*, 2011 ME 97, ¶ 18, 28 A.3d 620.

[20]  General recreational activities include walking, sunbathing, picnicking, playing games, swimming, jet-skiing, water-skiing, knee-boarding, tubing, surfing, windsurfing, boogie boarding, rafting, paddle boarding, snorkeling, and the like.  As has been the practice, however, any use that exceeds such general recreation, such as conducting a wedding or storing a boat, would require the Beachfront Owner's permission.

D.    Conclusion

[¶36]   We therefore vacate the judgment awarding the Town and Backlot Owners a prescriptive easement over Goose Rocks Beach, and deciding that the public has a right to engage in ocean-based activities in the intertidal zone pursuant to the public trust doctrine.   We remand the matter to the Superior Court for disposition of the remaining causes of action.

The entry is:

> Order granting the Backlot Owners' right to intervene vacated.   Judgment vacated and remanded for further proceedings consistent with this opinion.

---

**On the briefs:**

Sidney St. F. Thaxter, Esq., David P. Silk, Esq., and Benjamin M. Leoni, Esq., Curtis Thaxter, LLC, Portland, for appellants Robert Almeder et al.

Christopher E. Pazar, Esq., Drummond & Dummond, Portland, for appellants Janice M. Fleming, Terrence G. O'Connor, and Joan M. Leahy

Amy K. Tchao, Esq., Melissa A. Hewey, Esq., Brian D. Willing, Esq., and David M. Kallin, Esq., Dummond Woodsum, Portland, for appellee Town of Kennebunkport

André G. Duchette, Esq., and Gregg R. Frame, Esq., Taylor, McCormack & Frame, LLC, Portland, for appellees "TMF Defendants"

26

Richard J. Driver, Margarete M.K. Driver, Alexander M. Lachiatto, and Judith A. Lachiatto, pro se appellees

Adam Steinman, Esq., Cape Elizabeth, for appellee Surfrider Foundation

Janet T. Mills, Attorney General, and Paul Stern, Dep. Atty. Gen., Office of Attorney General, Augusta, for appellee State of Maine

John A. Cunningham, Esq., and Noreen A. Patient, Esq., Eaton Peabody, Brunswick, for amicus curiae Maine Forest Products Council

Brian P. Winchester, Esq., Augusta, for amicus curiae Maine Snowmobile Association

Ivy L. Frignoca, Esq., Portland, for amicus curiae Conservation Law Foundation

**At oral argument:**

Sydney St. F. Thaxter, Esq. for all appellants

Amy Tchao, Esq. for appellee Town of Kennebunkport

André G. Duchette, Esq. for appellee "TMF Defendants"

Paul Stern, Dep. Atty. Gen., for appellee State of Maine

York County Superior Court docket number RE-2009-111
FOR CLERK REFERENCE ONLY